Lake, Ch. J.
The defendants in the court below were jointly indicted, tried, and convicted of the crime of horse stealing1, and have brought'the case here for review by writ of error.
I. The indictment contains four counts: the first and third counts charging the defendants with the larceny of certain horses, and the second aud fourth counts charging them with receiving horses, of a similar description, knowing them to have been stolen. It was contended on the argument, by counsel for the prosecution, that the property mentioned in the second and fourth counts was the same as that described in the other two, which charge the larceny. This may be so, but if we look to the indictment alone no such inference could be properly drawn. For aught that appears, the several counts refer to separate, and entirely distinct offenses. But however this may be, inasmuch as no objection was made on that ground in the court below, and the jury having found . the defendants guilty as charged in the larceny counts, it is too late to raise it for the first time in this court. Shotwell's Case, 27 Cal., 394. People v. Burgess, 35 Cal., 115.
II. It is objected that the verdict is insufficient in law for the reason that it does not show the value of the *529 property stolen. This objection cannot be sustained. The language of the verdict is, “We the jury impaneled, and sworn, and charged, in this cause, do find the defendants George O. Thompson and George Rhodes guilty as they stand charged in the first and third counts of the indictment, and not guilty as they are charged in the second and fourth counts of the indictment. And we further find the property described in the indictment to be of the value of one hundred and fifteen dollars.”
Now we think it would be quite unreasonable to presume that this valuation was of any other than the property which the jury found the defendants guilty of stealing. So far as disclosed by the record, it does not appear that any evidence was introduced upon the counts for receiving stolen property. That subject was not even alluded to by the judge in his instructions, which were confined to the counts charging the defendants with the larceny of the horses. To justify the reversal of a judgment, the alleged error must be manifest in the record, and not depend alone upon the possibilities of construction.
III. Objection is made also to certain portions of the instructions given to the jury as to the law of the case. The charge of the judge was in writing, and became a part of the record of the case by being filed as directed by section four, of the act amendatory of section fifty-eight, Oh. 11, of the General Statutes, approved February 25, 1875. Until the passage of this act, the instructions given to a jury could become a part of the record only by means of a bill of exceptions, formally allowed^ and certified by the presiding judge.
In at -least two essential particulars these instructions are clearly erroneous; first, in the definition given of larceny, and second, in the statement of the effect to be *530 given to the fact of possession of the property by the defendants, after it was taken from the owner.
On the first point the instruction was this: “Larceny is defined to be the taking and carrying or leading away the personal property of another, without his consent and against his will, with intent to appropriate the same to the use of the taker. Hence, if the taking of the property was with the intent to convert the same to the use of the taker the offense is complete.” The fault to be found with this definition is, that an important ingredient, that which distinguishes larceny from a simple trespass, is omitted, viz: the animus furandi, without which a taking is no larceny. People v. Reynolds, 2 Mich., 422. Keeley v. State, 14 Ind., 86. Larceny is not defined in our statutes, and resort must be had therefore to the common law to ascertain what its constituent elements are. “Simple larceny is the felonious taking and carrying away of the personal goods of another, with intent to deprive the owner permanently of his property therein.” Broom & Hadley's Com., Vol. 2, Am. Ed., 513. The taking of the goods must be with a felonious intent, otherwise there is no larceny. State v. Gresser, 19 Mo., 247. Phelps v. The People, 55 Ill., 334.
Now admitting that the testimony before the jury fully supported the instruction above quoted, and such is the presumption where the evidence is not preserved, and that it was clearly proved that the defendants had done all that the jury were told would constitute a larceny, and authorize a verdict of guilty, it would amount only to a simple trespass, nothing more. And this being so, it is clear that this instruction was not only erroneous, but must have operated directly to the prejudice of the accused. No other conclusion would be reasonable.
The jury were further instructed that “ the general rule of law is, that whenever the property of one man which has been taken from him without his knowledge or con *531 sent, is found upon, or in the possession of another, or others, it is incumbent on such person or persons in whose possession it is found to prove how they came by it; otherwise the presumption of law is that he or they obtained it feloniously.” Here it will be observed that the idea is again pressed lipón the attention of the jury, that the mere proof of the fact that the subject of the alleged larceny was taken from the owner “ without his knowledge or consent,” would make the crime complete, and if the property were found in the defendants’ possession it would warrant their conviction, unless they'had “■proved” that they had come by it honestly.
Altogether too much importance is here given to the simple possession of the property by the accused, for even if the felonious taking were fully established, and the possession of the fruits of the larceny -were the only evidence implicating the defendants in the transaction, they were not bound to “prove” how that possession came about.
There is some conflict in the authorities as to the effect to be given to the proof of possession of stolen property, but we doubt very much if one case can be found which goes to th/e extent of this instruction. Indeed, some authorities hold that possession alone is ntft sufficient, in any case, to warrant a conviction. On this point, see People v. Antonio, 27 Cal., 404. Durant v. The People, 13 Mich., 351. The better rule however seems to be, that if the possession of the stolen article be recent after the theft, such evidence is sufficient to make out a prima facie case, proper to be left to the jury, who are the sole judges of the effect that should be given to it. State v. Merrick, 19 Maine, 398. 1 Phil, on Ev., 634.
In the case of State v. Merrick, above cited, the prisoner was charged with the larceny of certain sheep, and the court in commenting on the instructions given to the jury say: “It was, in our judgment, too strong to *532 instruct the jury that, they must convict the accused unless he had proved to their reasonable satisfaction that he came by the sheep otherwise than by stealing.” And in this case, while it might have been impossible for the defendants to prove how they came to be possessed of the property, still, if they had'succeeded in raising in the minds of the jury a reasonable doubt that they stole it, they were entitled to an acquittal.
IY. But it was urged in argument by counsel for the prosecution that, no exception having been taken to the charge in the court below, it is too late to assign these errors here as ground for a reversal of the judgment.
The rule here invoked is properly applicable in all civil cases, and quite generally in criminal cases also. But in the latter class it is not of universal application, especially in capital and other felonies, where reviewing courts not unfrequently correct errors prejudicial to the accused, or where the charge cannot be correct in any conceivable view of the case, although no objection was interposed on that ground in the court below. This instruction, as before stated, is a part of the record of the case, made so by statute, and is therefore properly before us. There is no doubt whatever that the charge as here set out was given, and the alleged errors in fact committed. It is equally certain that it had a direct tendency to prejudice the accused, no matter what the testimony may have been. Under these circumstances we deem it to be our plain duty to correct the wrong by awarding to the defendants a new trial.
In the case of Leoffner v. The State, 10 Ohio State, 598, where error was alleged in the charge to the jury on the question of insanity, and no exception had been taken, the supreme court of Ohio did not refuse on that ground to consider it. The want of such exception having been suggested, Mr. Attorney-Oeneral Walcott, representing *533 tlie state, made use of tlie following language which we here quote with approval: “While this seems to be the rule in this state in civil cases, it does not comport with my conviction of duty to argue that where a charge is spread upon the record, so ap to be legitimately before the reviewing court, and it is apparent that the prisoner has been vitally or substantially prejudiced by an erroneous ruling of the charge, the reviewing court ought not, suo sponte, to take notice of the error and reverse the judgment. No man’s life should be forfeited because of the omission of his counsel-to take exception. The interests of public justice do not, in my opinion, require, or even permit me to urge this objection against considering any error in the charge of'the court.”
We conceive the same rule to be appropriate in all cases of felony where the ends of justice seem to require its application. People v. Levison, 16 Cal., 98.
Reversed and remanded.