## SATTERWHITE v. STATE.

### Opinion delivered February 25, 1907.

1. TRIAL—IMPROPER ARGUMENT—EFFECT OF WITHDRAWAL.—Where defendant was indicted for assault with intent to kill, when he might have been indicted for some degree of homicide instead, a remark of the prosecuting attorney in his opening argument to the effect that deceased was shot down and brutally murdered by defendant, while

erroneous, was not prejudicial if it was withdrawn on defendant's objection. (Page 72.)

2. ASSAULT WITH INTENT TO KILL—SUFFICIENCY OF EVIDENCE.—To sustain an indictment for assault with intent to kill, the proof must show that the offense would have been murder if death had resulted from the assault, and therefore must show premeditation, deliberation and malice. (Page 73.)

3. INSTRUCTIONS—CONSTRUCTION AS A WHOLE.—A series of instructions which supplement each other and, taken as a whole, state the law correctly is not objectionable, though some of them, standing alone, are objectionable for stating the law incompletely. (Page 74.)

Appeal from Hempstead Circuit Court; *Joel D. Conway,* Judge; affirmed.

### STATEMENT BY THE COURT.

Appellant was convicted of an assault with intent to kill. The testimony of Effie Satterwhite, daughter of appellant, was about as follows: She and Jim Wallis were sweethearts, but not engaged. Wallis had proposed to her, but she had not answered him. He had been visiting her for about one year before the night of the shooting, commenced to visit her when she lived with her brother about one year before and when she was 17 years of age. She was eighteen when the shooting of Wallis occurred. On that night she and Wallis went to an entertainment and returned to her father's house about ten minutes before 11 o'clock P. M. She started to go in the house, but was stopped by Wallis who reached out his hand and drew her to him and kissed her. She put her hands against him and pushed him away. They walked to the end of the porch, and stood there talking until the clock struck eleven. Wallis looked at his watch, and then turned and kissed her again. He then left the house. Witness went into the house, going directly into her mother's room. As she went in, she heard another door open and shut, and she pulled back the curtain and saw appellant going down the steps with the gun in his hands. She did not remember what she did until she heard the gun fire. When the gun fired, she went out of the house and towards the place where Wallis was lying on the ground shot. Before she got to Wallis she met appellant coming away from the scene of the shooting, and he turned her back and made her go to their home

with him.　She begged appellant to let her go to Wallis.　Appellant finally consented for her to go.　Witness was very much excited, and does not remember what she and appellant said to each other while she was at the house after the shooting.　She found Wallis about 40 yards from the gate, on the sidewalk, lying down.　When she went up to him, Wallis said to her, "Effie, I am shot; I am dying."　She was the first person to get to Wallis after he was shot.　While she was there, Kitchens and Bridewell came.　This occurred on the second day of April, 1906, and was in Hope, Hempstead County, Arkansas.　Witness said that her father was very much excited; that he did not know what he was doing.　She knew his temperament and condition of mind.　He was in his night clothes.　When Wallis kissed her, the reason she pushed him away was that she thought Wallis pulled her too close to him.　He did not attempt any liberties with her at that time except to put his arm around her.

John Kitchens testified that he found the man, wounded, lying on the sidewalk close to his house; that he was attracted by the shot and the cries of the wounded man; that, after the shot was fired, witness looked out of his window, and saw appellant run up to the man, who was prostrate on the ground, and raise something that looked like a gun and strike at the wounded man.　He went to the wounded man, and when he got there he found Bridewell and Effie Satterwhite.　They saw Satterwhite, appellant, on the other side of the street and asked him to come and help carry the wounded man into the house.　The appellant replied that he did not know whether he was worth carrying in or not.　Other parties had come up by this time, and one of them, recognizing the appellant as he was approaching, met him and turned him back.　A doctor was brought.　Wallis was carried into Kitchens's house, and the father of the wounded man, Wallis, was sent for.　When Wallis's father came in, he said to his son, the wounded man, "Well, Jim, I have been telling you about this for a long time."　The wounded man said that he believed that he would die, but the doctor told him that he thought he would get over it.　Wallis told this witness that appellant had shot him for kissing Miss Effie.　He told this witness how the assault occurred, about as narrated by Effie Satterwhite, except that he said that appellant called to him, and that he, Wallis,

turned round and started back toward appellant, and that when he got close appellant threw his gun up and shot him. That appellant shot Wallis about 200 feet from appellant's gate.

This testimony was introduced without objection. Another witness for the State testified that immediately after the shooting he heard appellant talking to his daughter, Effie, in a loud tone of voice, and censuring her about what she had done, saying that she had got him into trouble by hugging and kissing this young man, and he was blaming her with the trouble.

The physician who was called to see Wallis the night of the shooting testified that the wound was in Wallis's left leg about midway between the knee and the hip. The wound was made with small shot, and it looked as though a whole load had taken effect. The bone was fractured. Wallis lived until the first day of August, 1906, when he died in Texarkana in a sanitarium, when he was still under treatment for the wound, which looked like it was going to heal.

On behalf of appellant, Gus Satterwhite, son of appellant, testified: "That up to January previous to the shooting appellant had lived in Nevada County, Arkansas, while witness was living at Hope, Arkansas; that most of the time while witness lived in Hope and up to the time that appellant moved to Hope, his sister, Effie, lived with him; that on one occasion, nearly a year before the shooting, he saw Effie and Jim Wallis, the assaulted man, in a very suspicious attitude and conducting themselves in what he thought a very unbecoming manner on the front porch of witness' house; that he, witness, immediately went out on the porch, made his sister go in the house, and ordered Wallis away from the place, and told him never to come back there again or to pay his sister any more attention; told him if he did he was liable to get hurt; that the next day Wallis came to him, made all kinds of apologies, and told him that he loved his sister, and that he meant no harm by what he had done, and that if he would forgive him and let him go with his sister he would promise him faithfully to treat her as a lady and would never attempt to take any liberties with her. Upon this, witness told Walls that it was all right; that he could go with Effie as long as he treated her as a lady, but that he must not do any more like he had seen him doing the night before. That Wallis

continued at intervals to visit his sister while she was at his house. That when his father next saw the witness he told him about this occurrence; what he had said to Wallis and the promises that Wallis had made; that appellant concluded to say nothing about it, but let the matter go on, relying, he supposed, upon the promises made by Wallis. He knew that the relations between appellant and Wallis up to the time of the assault were friendly."

Appellant's counsel sets forth the substance of appellant's testimony as follows:

"He tells of his friendly relations with the assaulted man up to the afternoon of the very day on which the assault occurred that night. He tells of what he saw of the young people upon his gallery at eleven o'clock that night. He tells of the effect it had upon him, and how angry he became; he explains that he had no doubt in his mind but that Wallis was trying to seduce his daughter and deprive her of her virtue. He says that this thought rendered him for the time being totally demented. He tells how he got his gun, went out in his night clothes, followed Wallis, called to him, and as Wallis turned and came back to him he shot him, not trying to kill him, but, as he says, to cripple him badly. He says, in answer to a question propounded by the State's attorney, that he shot him for revenge for what he thought he, Wallis, was trying to do to his daughter. He tells how, after shooting one barrel of his gun at him, he ran up to him and struck him on the head with the gun, not hard enough to seriously injure him, but to prevent Wallis from using his pistol if he had one. He explains that the other barrel of his gun was loaded, and if he had desired to do so he could easily have shot Wallis and killed him with it, or could have beaten his brains out with the gun. He tells of his actions after the shooting and of his mental condition while talking to his daughter and upbraiding her for being the cause of the trouble by allowing Wallis to take liberties with her."

Effie Satterwhite, recalled for appellant, testified that she had a conversation with her father prior to the shooting of Wallis, in which her father remonstrated with her about allowing Wallis to kiss her. She said that Wallis had attempted liberties with her, but she did not tell her father.

The court gave the following instructions, to which appellant excepted and saved objections to the court's ruling:

"12. In order to constitute the offense of assault with intent 'to kill or murder, there must exist in the mind of the slayer before the killing the specific intent to take the life of the person slain; but it is not necessary that such intent be formed for any particular length of time before the killing, but it may be conceived in a moment before.

"13. , You are instructed that if you find from the evidence that the defendant assaulted Jim Wallis as alleged in the indictment, and that his only motive for the assault was because Wallis had either kissed 'or passionately embraced defendant's daughter, and that defendant made an assault in order to gratify a spirit of revenge, then the defendant can not be justified or excused for the assault, but would be guilty as charged and you should so find by your verdict.

"14. If you believe from all the evidence and circumstances in this case beyond a reasonable doubt that the defendant made the assault with the intent of mind at the time to kill Jim Wallis, then you find him guilty as charged in the indictment."

The court also gave the following at the request of appellant:

"1. Manslaughter is the unlawful killing of a human being without malice, expressed or implied, either voluntarily upon a sudden heat of passion, or involuntarily, but in the commission of some unlawful act. And if you find from the evidence in this case beyond a reasonable doubt that the defendant did unlawfully shoot Jim Wallis, but in a sudden heat or transport of passion, and without malice, then, if death had ensued as the result of the shooting, the defendant would have been guilty of manslaughter and not murder, and it would be your duty to acquit the defendant of the charge of assault with intent to kill under this indictment.

"2. The court instructs the jury that the crime of murder requires the mind to have acted from deliberation and intelligence; and when it is clouded by a passion apparently irresistible in a reasonable person and a killing occurs, the killing is only manslaughter. The passion which in law rebuts the im-

putation of malice, so as to reduce the killing to manslaughter, need not be so overpowering as for the time to shut out knowledge and destroy volition, but that heated condition of the mind that would render a reasonable man deaf to the voice of reason; so that, although the act done was likely to produce death, it was not the result of malignity of heart, but imputable to human infirmity. There is no necessity that the reason should be dethroned, or that the slayer should act in a whirlwind of passion, but there must be a sudden passion upon reasonable provocation apparently sufficient to make the passion irresistible.

"3. It is necessary to sustain an indictment for an assault with intent to kill and murder for the State to show beyond a reasonable doubt that, had death resulted from the assault, the defendant would be guilty of the crime of murder. If the evidence should show beyond a reasonable doubt that, had death ensued as the result of the assault, the defendant would be guilty of manslaughter only, then the jury must acquit the defendant of the charge of assault with intent to kill and murder."

The court refused the following asked by appellant, to which ruling appellant objected and saved his exceptions:

"4. The jury are instructed that a party has a legal right to defend his dwelling and any person dwelling or being therein, and most especially the immediate members of his own family; and, when it is necessary, he may take the life of the party assailing his dwelling or his family to protect them from great bodily harm. A man has the legal right to protect the chastity of his wife, daughter, or any female immediately intrusted to his care; and, if it is necessary to protect such chastity, or it so appears to a reasonable man, to take the life of the assailant, whether such assault is made by violence or by the wiles and blandishments of the party seeking to assail said chastity, if, in the opinion of the defendant, taking of life is necessary, he may slay him.

"5. If the assault was made by the defendant while in a violent heat of passion, or under a provocation which rendered the passion irresistible, even although the defendant acted in a spirit of revenge while laboring under said passion, then the defendant would not be guilty of an assault with intent to kill, but the offense would be reduced to an inferior grade of assault.

"6. You are instructed that the defendant had the right to act upon appearances, although he may have been deceived; and in this case if you believe from the evidence that the defendant, acting as a reasonably prudent man, just before he made the assault upon Jim Wallis, honestly believed that the said Jim Wallis was taking undue liberties with the person of his daughter, Effie, thereby by his wiles and blandishments to deprive her of her chastity, then he had a right to act upon such appearances, and, if necessary to slay the said Jim Wallis to preserve his daughter's chastity, he could legally do so."

Statutory instructions were given without objection on murder, manslaughter, justifiable homicide, and malice. The motion for new trial contains the various assignments of error reserved at the trial. Among them was the following:

"4. That the court erred in permitting the attorney who assisted the prosecuting attorney in the trial of this case in the opening argument before the jury to refer to the party upon whom the assault was made in the following language: 'This young man was shot down and brutally murdered upon the streets of Hope by the defendant,' when the defendant was not on trial for any degree of homicide, but was being tried for an assault with intent to kill and murder. That said language was prejudicial to the defendant and calculated to mislead the minds of the jury from the true issues in the case, and to prejudice the minds of the jury against the defendant in the trial of the true issues, and said statement was not authorized by any evidence introduced in the trial of the case, but was entirely *dehors* the record, and to which language the defendant at the time excepted."

The record shows that the remarks to which this assignment refers were withdrawn immediately upon objection being made to them.

*W. S. Eakin,* for appellant.

1. The evidence warrants the conclusion that the assault was made upon a sudden heat of passion, apparently sufficient to make the passion irresistible. Had death ensued as a result of the assault the crime could not have been greater than manslaughter. Hence, under this proof, the defendant being charged,

not with homicide, but with assault, he should not have been found guilty of a higher grade than aggravated assault. Kirby's Digest, § 1778; 16 Ark. 569; 37 Ark. 238; 34 Ark. 469; *Id.* 275.

2. A statement by the State's attorney in argument, that "this young man was shot down and brutally murdered by the defendant," the defendant being on trial only for assault with intent to kill and murder, was misleading to the minds of the jury, and so prejudicial to the defendant that the error could not be cured by a withdrawal of the remarks after admonition of the court upon objection raised by defendant.

3. The court erred in giving instructions 10, 11, 12 and 14 for the State, and in refusing instructions 4, 5 and 6 requested by appellant

*Wm. F. Kirby,* Attorney General, and *D. J. Taylor,* for appellee.

1. Since the remarks complained of by appellant were immediately withdrawn, and the punishment assessed against him was, under the proof, extremely lenient, there could have been no prejudice resulting from the remarks.

2. To sustain an indictment for assault with intent to kill, it is necessary that the facts and circumstances should be such that, had death resulted, the assailant would have been guilty of murder. Hence the 12th instruction was proper. 72 Ark. 569; 34 Ark. 275; 79 Ark. 460; 25 Ark. 405.

3. If the instructions as a whole fairly and completely present the law, no prejudice results if one is erroneous. 73 Ark. 158; 74 Ark. 431.

4. An exception in general terms, pointing out no specific error, will not be noticed. 78 Ark. 284; 73 Ark. 315; 74 Ark. 431.

WOOD, J. (after stating the facts.) The remarks of counsel assisting in the prosecution of appellant were improper, but, as they were immediately withdrawn, we are of the opinion that they were not of such character as to produce permanent prejudice in the minds of the jury, notwithstanding their withdrawal. This holding does not conflict with the rule announced in *German-American Insurance Co.* v. *Harper,* 70 Ark. 305. Each

case, as shown there, depends upon its peculiar facts. Here, even if it had been true that the shooting of Wallis resulted in his death, which the statement indicated, still the jury knew that appellant was only on trial for an assault with intent to kill; they knew that appellant could not be punished for any other crime under the charge being investigated. They were cognizant of all the facts of the alleged assault, and must have known from these that the attorney was but expressing his own opinion in designating the crime *murder,* even if death resulted from the assault. The remarks having been withdrawn, the jury had no right to assume as a fact proved in the case that Wallis was killed by appellant, much less that Wallis was murdered by appellant.

The twelfth and fourteenth instructions, taken alone, would be erroneous, because they make appellant's guilt depend solely upon the question of whether or not he intended to kill Jim Wallis at the time of the shooting, whereas that was not the only question. For, even though appellant did intend to take the life of Wallis at the time of the assault, still he would not be guilty of an assault with intent to kill if the assault was the result of a sudden passion caused by a provocation apparently sufficient to make the passion irresistible. An intent to kill is not the only ingredient of the crime. There must be malice, either expressed or implied. The proof must show that it would have been murder had death resulted from the assault. *McCoy* v. *State,* 8 Ark. 451; *Cole* v. *State,* 10 Ark. 318; *Lacefield* v. *State,* 34 Ark. 275; *Davis* v. *State,* 72 Ark. 569. But, when the above instructions are taken in connection with the instructions given at the request of appellant, we hardly think the jury could have been misled by them. The jury would not have been warranted in taking them independently as a statement of the law of the case upon which the guilt or innocence of the prisoner turned. For in instructions numbered one, two and three given at the instance of appellant, which may be taken as additions or qualifications to instructions numbered twelve and fourteen *supra,* the court makes it clear that if the assault was the result of a "sudden heat or transport of passion and without malice," the appellant would not be guilty of an assault with intent to kill. The instructions must be considered as a whole, and, when so

considered, we are of the opinion that they were tantamount to saying to the jury that while it was necessary to show a specific intent to take life in order to constitute the crime of an assault with intent to kill, it was also necessary to show that the assault was made with malice, or deliberation and premeditation, and hence not the result of a sudden passion caused by a provocation apparently sufficient to make the passion irresistible. It is apparent that the court did not undertake to compass the law of the case in instructions numbered twelve and fourteen given at the instance of the State. These, which refer to the necessity of showing a specific intent to take life in order to constitute the offense charged, must be taken and considered in connection with the instructions asked by appellant, which tell the jury that if the assault was made without malice, or without deliberation and premeditation, being the result of passion aroused by a provocation apparently sufficient to make the passion irresistible, the appellant would not be guilty of an assault with intent to kill. The twelfth and fourteenth had reference to the question of intent to take life, the others had reference to the presence or absence of malice or deliberation and premeditation. Taken together, they contain no prejudicial error. *Beene* v. *State,* 79 Ark. 460. The instructions to which objection was made and others, when considered as a whole, fairly presented the law of the case. See *Taylor* v. *State,* 73 Ark. 158; *Thomas* v. *State,* 74 Ark. 431. Those given at appellant's request can not be approved as precedents. They are more favorable to appellant than the law warranted, but of that he can not complain. Those asked by appellant, which the court refused, were not correct statements of the principles of law applicable to the facts of this record. A majority of the court are of the opinion that, even if there was error in the instructions, it was not such as to mislead the jury under the evidence.

There was ample evidence to sustain the finding of the jury that appellant assaulted Wallis in a spirit of revenge, under circumstances that were not apparently sufficient to arouse the passions of a reasonable man to an extent irresistible. He loaded his gun after seeing the young man kissing his daughter and followed him out of the yard, called him back, so that he might be closer, and shot him, as he says, intending to hurt him, but not to kill

him. But the jury found against him on the question of his intent, and, considering the nature of the weapon, the kind of load it contained, the close range at which it was fired, and the character of the wound, the jury was warranted in finding an intent to take life. Appellant says when asked what was his object: "I could hardly tell you; only I wanted to have some revenge." So far as the evidence in this record discloses, the jury were warranted in finding that the purpose of young Wallis was not, as appellant imagined, to "intrude upon the virtue" of his home, not to rob his daughter of her chastity, but to make her his wife. This both the statements of the young lady and of Wallis tended to show was the fact. They knew most about it, and there is nothing to the contrary shown. Appellant did not act as a reasonable man should under the circumstances. See *Hoard* v. *State,* 80 Ark. 87. For inquiry of either of the young people at that time doubtless would have disclosed the true status of their social relations, and prevented his imagination from conjuring the evils which appellant supposed existed in the mind of young Wallis toward his daughter, and which he says led him to commit the unfortunate deed which has deprived him of his liberty. The jury concluded that the provocation was not apparently sufficient to make the passion irresistible, and upon the testimony of appellant himself and the other evidence we are of the opinion that their conclusion was amply supported by the proof.

Judgment affirmed.