GEORGE C. BOYER v. STATE OF NEBRASKA.

FILED MAY 7, 1909. No. 15,996.

1. **Criminal Law: INSTRUCTIONS.** If the court in its instructions purports to copy a section of the criminal code, the quotation should be correct; but if one word only of the statute is omitted, and the court in other instructions makes a correct concrete application of the law to the facts in the case, and it is apparent that the jury could not have been misled by the omission referred to, the error is without prejudice.

2. **Homicide: INSTRUCTIONS.** If, in a case of homicide, the court instructs the jury to consider whether defendant "struck the fatal blow unlawfully," the adjective "fatal" precludes the idea that the jury are to consider merely the blow, and not its consequences.

3. ————: ————. If a defendant in a homicide case testifies and does not state that he apprehended any serious injury from the deceased, it is not error for the court to refuse to instruct that apprehension of such injury need not be well founded in fact to justify one assailed or threatened in acting upon appearances, if all of the facts and circumstances produced a reasonable apprehension in defendant's mind of serious bodily injury from the deceased. Nor will this court in that state of the record scrutinize closely instructions submitting the law of self-defense to the jury.

4. **Criminal Law: INSTRUCTIONS.** It is not error to refuse an instruc-

tion where the proposition of law therein contained is substantially covered in an instruction given by the court on its own motion.

ERROR to the district court for Cheyenne county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*W. P. Miles, Wright & Wright* and *J. L. McIntosh,* for plaintiff in error.

*William T. Thompson, Attorney General,* and *George W. Ayres, contra.*

ROOT, J.

Plaintiff in error was sentenced to imprisonment in the penitentiary for a term of three years for the crime of manslaughter, and appeals.

1. It is argued that the evidence does not sustain the verdict because the state did not prove beyond a reasonable doubt that the deceased died as a direct result of his encounter with defendant. Defendant's farm was separated from the farm of the deceased, Mr. Perlick, by a section line and public highway. It is admitted that the parties engaged in an altercation over certain posts which defendant and his son, who was 17 years of age, were setting, possibly, in said highway. The only eyewitnesses who testified to the tragedy were the accused and his son, and they agree that Perlick started the quarrel, and finally threatened to shoot defendant, whereupon the latter struck Perlick over the head with a piece of two by four, four feet in length, which defendant had been using to tamp the dirt around a post. Perlick became unconscious, and so remained until he died two days thereafter. Dr. Emmerson assisted in an operation performed on the skull of the deceased, and later participated in the autopsy, and testified that in his opinion a certain fracture of the skull and rupture of an artery of the deceased were caused by the fall upon the ground, and not as a direct result of the blow inflicted by defendant.

The distinction made by the witness is immaterial. In either case the blow was the proximate cause of the injury and of Mr. Perlick's death.

2. The information charged murder in the second degree, and the court gave an instruction which purported to be a copy of section 5 of the criminal code, which defines manslaughter, but omitted therefrom the adverb "unlawfully" next preceding the word "kill," and this evident inadvertence presents the most serious question for our consideration. It is argued that the jurors were thereby given to understand, that, if Perlick was killed by defendant, they should convict the latter, although he acted in self-defense. If the other instructions of the court indicated that such a theory was presented to the jurors, we would not hesitate to reverse the case, but such is not the fact. In the seventh instruction the jurors were informed that, to convict defendant of manslaughter, the state must prove beyond a reasonable doubt "that the defendant *unlawfully* killed the said Perlick without malice, either upon a sudden quarrel, or unintentionally, while he was in the commission of some unlawful act," and that, if the state failed to prove all of said allegations beyond a reasonable doubt, the defendant should be acquitted. In the tenth instruction the court said that, if the jurors believed from the evidence and beyond all reasonable doubt "that the defendant struck the fatal blow *unlawfully,* but without malice," etc., they should return a verdict of manslaughter. The court also instructed that the act was lawful if done in self-defense. Thus it will be noticed that, in each instance where the court made a concerte application of the law to the facts in the case, the jurors were informed that they could not convict unless the slaying was unlawful. We do not think it possible that the jury could have been misled upon a consideration of the entire charge of the court, nor that, as thus considered, the record presents the prejudicial error urged by counsel for the defense. *Satterwhite v. State,* 82 Ark. 64, 100 S. W. 70; *St. Louis v.*

*State*, 8 Neb. 405; *Debney v. State*, 45 Neb. 856; *Harper v. State*, 83 Miss. 402, 35 So. 572.

Counsel cite many authorities holding that the omission of the word "unlawfully" from an indictment renders the document defective, but in the instant case defendant was charged with *unlawfully* causing Perlick's death. Several decisions of this court are also cited. In *Thompson v. People*, 4 Neb. 524, the court in defining larceny omitted the element of felonious intent. It does not appear that the charge of the court taken together correctly stated the law, and the reversal was proper. In *Ballard v. State*, 19 Neb. 609, the court, in applying the law to the case before the jurors, incorrectly informed them that, if they were "satisfied from the evidence that the defendant was at the time of the killing insane, aside from being under the influence of liquor," they should acquit. There was some evidence to indicate that the defendant was insane, and it was properly held, with such evidence in the record, that the state was compelled to prove beyond all reasonable doubt the prisoner's sanity, and the instruction was erroneous. In *Beck v. State*, 51 Neb. 106, the court had erroneously instructed the jury that the burden of proving an alibi was upon the defense, and it was held that this improper application of the law to the case on trial was not cured by another instruction that, if the evidence concerning an alibi created a reasonable doubt in the jurors' minds, they should acquit. In *Henry v. State*, 51 Neb. 149, the instructions placed the burden on defendant of proving an alibi, and also that the alibi to avail must have been such that defendant could not possibly have committed the crime, and were held erroneous, although other instructions somewhat modified the errors referred to. In *Barr v. State*, 45 Neb. 458, the court had incorrectly stated the law as applied to the facts therein, and the judgment was reversed notwithstanding some of the other instructions given stated a contrary rule. In none of the cases cited, other than *Thompson v. People, supra*, had the court merely erred

in an abstract definition of the crime, but in each instance had erroneously instructed the jury in the application of the principles of law to the facts presented on the trial. We are of opinion that the judgment should not be reversed because of the omission of the word referred to.

3. Instruction numbered 10 given by the court, is criticised because it is alleged that the jurors were permitted thereby to convict defendant upon proof that he struck Perlick, without reference to whether death ensued as a result thereof. An instruction in the identical language was approved in *Savary v. State,* 62 Neb. 166, but it was given at the defendant's request, and therefore does not necessarily represent the judgment of the court as a proper exposition of the law in every homicide case where self-defense is claimed. The court might well have made the instruction more comprehensive, but it refers to the *"fatal* blow." The qualifying word "fatal" has been defined as causing death; deadly; or mortal; and the instruction must have conveyed to the jurors' minds not only the fact of striking the blow, but that as a result thereof Perlick was killed.

4. Witnesses testified that Perlick had twice threatened to shoot defendant, and that they had informed him of that fact before the homicide. It is argued that, therefore, defendant's second instruction should have been given. This instruction informed the jurors that, if defendant had information from reliable sources concerning said threats, they should consider that fact in determining whether defendant acted as a reasonable man would have done under the circumstances of this case. It is also urged that defendant's third and seventh instructions should have been given. The instructions may be a correct abstract statement of the law that threatened danger need not be actual to justify a person taking extreme measures for his protection, but that, if conditions are such as to create in the mind of the person threatened a reasonable apprehension of serious bodily harm to himself, he might act thereon, although he was not actually

in peril. The instructions are not relevant in the instant case. Defendant did not testify that he feared any bodily harm from Perlick or that he hit his victim in self-defense. Considerable criticism is made of the expression "necessary self-defense" as found in an instruction given, but any self-defense that was not reasonably necessary or apparently necessary to an ordinarily reasonable man in like situation with defendant would not justify him in striking his opponent over the head with a huge club, and the expression was a proper one to use. Wharton, Homicide (3d ed.), sec. 225. The eleventh and twelfth instructions, given by the court on its own motion, gave defendant the benefit of all the law that he was entitled to concerning self-defense.

The defense introduced witnesses to show that deceased bore a reputation in his neighborhood for being a quarrelsome man, and that he had threatened to kill defendant and his son. The evidence further shows that Perlick was a medium-sized man, 63 years of age, and so afflicted with chronic disease as to be practically harmless in an ordinary physical encounter. It also appears that defendant is but 42 years of age, is 6 feet in height, and weighs 190 pounds. At the time Perlick was killed he only wore a shirt and overalls, and did not have a weapon of any kind in his hand or on his person, but was standing between defendant and his son. The defense claims that Perlick cursed and said that he would kill defendant, and stepped back, at the same time making a motion with his hand toward his hip pocket, and that, before Perlick's hand reached the pocket, defendant hit him with the tamper. It is unreasonable to believe that Perlick would have attempted to put his hand in his hip pocket when there was nothing therein to aid him against defendant. It is also idle to say that, before he could have completed such a motion, defendant could have raised a club with both hands and hit the deceased over the head. Defendant testified and at no time stated that he feared any harm from Perlick or that he acted in self-defense. He did say

that he told Mrs. Perlick that her husband said that he was going to kill the witness, and that he hit Perlick with the club and hit him harder than he intended to, but he does not say that he told her the truth. His self-serving declarations will not be taken as proof of any fact therein referred to. The court was liberal under the circumstances in giving defendant the benefit of the law of self-defense. On the entire record we find that defendant had a fair trial, and that the jurors could not with regard to their oaths have acquitted him.

The court was merciful, and its judgment is

AFFIRMED.