## ROBERSON *v.* STATE.

Opinion delivered February 28, 1910.

1. ASSAULT WITH INTENT TO KILL—SUFFICIENCY OF PROOF.—To convict of an assault with intent to kill, there must be proof of a specific intent to kill the person assaulted, and the evidence must prove that, had the person died as a result of the assault, the assailant would have been guilty of murder in the first or second degree.   (Page 75.)

2. SAME—SUFFICINCY OF PROOF.—Under an indictment for assault with intent to kill it is unnecessary to prove that the assault was committed after or with deliberation.   (Page 75.)

Appeal from Miller Circuit Court; *Jacob M. Carter,* Judge; affirmed.

*Webber & Webber,* for appellant.

1. There is no evidence of an assault with the intent to kill, within the language of our statute.   The *intent* must be coupled with the *ability* to commit a felony.   49 Ark. 179; 77 *Id.* 37.   There is no proof of the *specific intent to kill,* and the burden was on the State to prove such intent.   54 Ark. 283; *Id.* 340.

2. There was error in the court's charge.   It was error to strike out the words "after deliberation" and "with deliberation" and insert "maliciously."   21 Cyc. 704; *Id.* 706; Blackstone Com. 199; 25 Ark. 446; Wharton on Hom. (3 ed.) 101 and notes 14-15.   It is error to refuse a specific instruction clearly applying the law to the facts, even though the law in a general way is given in other instructions.   90 Ark. 251; 69 *Id.* 134; 82 *Id.* 503.

*Hal L. Norwood,* Attorney General, and *W. H. Rector,* Assistant, for appellee.

1. To constitute the crime of assault with intent to kill, it must appear that, had the person died, the assailant would have been guilty of murder.   8 Ark. 451; 34 Ark. 275; 10 Ark. 318.

2. There is no prejudicial error in the charge.   The assault must be with malice aforethought, or malice with premeditation.   25 Ark. 446.   Deliberation is not synonymous with premeditation.   1 N. Y. Cr. Rep. 411; 74 Mo. 247; 60 Ark. 564.

3. The refused instructions were covered by others given,

which correctly stated the law, and the evidence is ample to sustain the verdict.

BATTLE, J. The indictment in this case, omitting caption, is as follows:

"The grand jury of Miller County, in the name and by the authority of the State of Arkansas, accuse Harry Roberson of the crime of assault with intent to kill, committed as follows, towit:

"The said Harry Roberson, in the county and State aforesaid, on the 10th day of November, A. D. 1909, upon one Fate Floyd, with a certain pistol, a deadly weapon, unlawfully, feloniously and of his malice aforethought, did make an assault with intent him, the said Fate Floyd, then and there being, unlawfully, wilfully, feloniously and of his malice aforethought to kill and murder, and then and there no considerable provocation appearing, against the peace and dignity of the State of Arkansas."

The defendant pleaded not guilty; was tried before a jury, and convicted, and was sentenced to be imprisoned in the State penitentiary for one year. The defendant appealed.

The testimony in behalf of the State was substantially as follows:

Fate Floyd testified: "I know the defendant. On the 7th day of August, 1909, the defendant assaulted me with a pistol in Miller County, Arkansas, at the house of Jenkins. Berton Colter and I were going home together, and I stopped at Jenkins's for him. While I was there, Roberson came in just as I was getting ready to go, and got as far as the middle door. I had been in the kitchen, and had started out, when Roberson came to the door and said: 'There is that damn negro now!' and jerked out a pistol and shot. Colter and I were wearing white hats. I made no effort to shoot him, or to do anything to him. The room was about fourteen feet square. We were about the distance of the room apart. We had never had any difficulty. I had no words with him. I only knew him when I saw him. We got to the door about the same time the shot was fired. I did not see Pearl Vaughan as the shooting took place. Just as I got in the door, and heard Harry come in the front door, I remember seeing him come up with the

gun. I don't know whether he got it out of his pocket, but he had it in a shooting position, and did shoot. It was pointed at me. I stooped behind the counter when the gun fired. I saw him come up with the gun, at which time he shot. His hand seemed to be raised at the time he shot. It seemed to shoot as it came up. I don't know where the ball went. I did not see any signs of it that night. Afterwards I came down and saw where the ball lodged by the door. The ball did not lodge anywhere near where I was standing, but was by another door. All I know about the ball is what they said about it. I don't know where it went. There was a window right behind where I was standing, and it had some lights out of it. It would be a straight shoot by me out of the window."

Jim Jenkins testified: "I know Fate Floyd, Berton Colter and Harry Roberson. I saw the shot. It happened at my place of business in Miller County, Arkansas. Harry Roberson came down there one time, and then left; then came back and said he wanted to ask me about some negroes that had been talking to Pearl Vaughan. Some 'white hat' negroes. Did not call the name. About that time Fate Floyd stepped to the door, and he said, 'There is one of those damn negroes now,' and shot. It seems that he was aiming to shoot at him, but I don't know. It was very quickly done. Fate had on a white hat. Colter had on a white hat. I did not see Pearl Vaughan at the time of the shooting. Saw her afterwards. When Roberson came in, he said if I did not stop those white hat negroes from talking to that woman, that there would be a shooting scrape in my house. Roberson had been there once before, but had left. Pearl left with him, but afterwards came back. There is a window just behind the door. It has some lights broken out of it. It was in August that the difficulty happened. I don't know whether the window was raised or not. I was looking at Harry when the pistol shot. The pistol ball went toward the right; about six feet in the floor. I can't say that Harry held the pistol straight out, because it was done so quick. I found the ball afterwards. I found the ball about six feet from where Harry was standing. Some two or three days after the difficulty I found it. Had not found it at the time I testified in the justice's court. Harry got me to look for

the ball. My wife was the first to find it. When we looked at first, we looked around the door, but afterwards Harry was down there, and Mr. Crenshaw, and we looked and found it where I have just stated."

Annie Jenkins and Berton Colter testified in behalf of the State; and their testimony corroborated that of Floyd and Jim Jenkins.

The testimony on behalf of the defendant was substantially as follows:

Harry Roberson, the defendant, testified: "I am the defendant in this case. That evening I was down town, and Pearl was at Jenkins's place. She said she was going to be down town late, and asked me to come by after her when I went home. She lived three blocks on the other side of me. When I went in the first time, I did not stay over three minutes. I started out after my wife. I got to thinking about telling her I would come by after her, and went back and met her just as I was going in, and she asked me what I was mad about, and I told her nothing; and I passed by the door and got to the window, and Jim Jenkins and his wife was sitting on that side of the table; and I says to Jim, 'You see, now, things are going to turn out just as I expected, and if you don't stop Pearl from talking to Colter, you are going to have some trouble.' I did not say anything about a shooting scrape. About that time Floyd or Colter one stepped to the door, and I put my hand to my side. I thought I saw a knife in his hand. Pearl stepped up and grabbed my hand. I am perfectly confident that I never pulled the gun out myself, and I never put my finger on the trigger, and, just as she grabbed it, the gun fired, and the ball went into the floor. I never ran anywhere. I just walked off. I had not drawn my gun when I made the remark to Jenkins. I won't be positive whether it was a knife I saw in Floyd's hand, but I thought it was. I won't say just what way the gun fired, because I was all turned around. I had no idea of shooting. I had some money that night, is the reason I happened to have the pistol. It was about 9 o'clock. Pearl is not any kin to me. I live about two blocks from her. She told me to come by there, that she would be there late, and asked me to take her home. That was about the first

time she ever asked me. When I went down there, she asked me what was the matter. I don't know what she meant by that. I guess it was because I went away and did not say anything to her. She was not talking to the fellows when I saw her. I got superstitious when I went into the house and Floyd came in behind me with a knife in his hand. I did not know that he had been talking that night, but that evening he did. I did not testify about this before, because I did not think it worth while. I testified in the justice of the peace court about seeing him with a knife. That was when I went there the first time."

Pearl Vaughan testified: "I was standing behind Roberson when the shot was fired. Floyd was coming in behind Roberson —out of the kitchen. Harry reached back like that and got his gun. He did not pull it out, but drew it up, but never did get it from his side. I grabbed his hand, and the gun went off. I don't know who shot the gun. The ball went five or six feet in the floor off to the right. Harry never got the pistol up, and did not point it at Floyd. I asked him to come by that night and go home with me."

The defendant asked for the following instructions to the jury:

"1. Before the State can ask a conviction in this case, the State must prove beyond a reasonable doubt every material allegation in the indictment, and you are instructed that to convict the defendant it devolves upon the State to prove beyond a reasonable doubt that the defendant, with malice aforethought and after deliberation and with intent to kill and murder one Fate Floyd, made an assault on said Fate Floyd, with a pistol under circumstances which would have constituted murder, if death had resulted; and unless you so find beyond a reasonable doubt, you should find defendant not guilty.

"2. An assault is an attempt coupled with a present ability to commit a violent injury on the person of another. Before the jury can convict this defendant, the State must prove, beyond a reasonable doubt, that the defendant, with malice aforethought and with deliberation, attempted to kill Fate Floyd; and, unless you so find from the evidence beyond a reasonable doubt, you should acquit the defendant.

"3. The defendant is entitled to the benefit of every reasonable doubt upon every material element in the case, and this is a substantial right of defendant guarantied him by law. The State must prove its case and every material element thereof beyond a reasonable doubt; and if, after a comparison and consideration of all the testimony in the case, the jury cannot say that they have a firm and abiding conviction to a moral certainty of the truth of the charge, it is their duty to find the defendant not guilty.

"4. If you find from the evidence that the defendant drew his pistol, but did not point it at or towards Fate Floyd, and that the pistol was discharged in a scuffle between defendant and Pearl Vaughan, or that said pistol was discharged by Pearl Vaughan catching the hand of defendant, you should find the defendant not guilty.

"5. You are instructed that, to constitute the offense of assault with intent to kill, it is not sufficient for the State to prove that the defendant drew his pistol from his pocket, unless the State further shows by the testimony, beyond a reasonable doubt, that defendant pointed said pistol at or towards Fate Floyd and shot the same at said Fate Floyd with the intention of killing him; and unless you find these facts from the testimony beyond a reasonable doubt, you should find the defendant not guilty.

"6. If you find from the evidence that the pistol was discharged by accident or by some one other than the defendant, you will find the defendant not guilty; or if you have a reasonable doubt as to whether said pistol was discharged by accident or by some one other than the defendant, you must give the defendant the benefit of said doubt, and find the defendant not guilty."

The court gave the third request, and amended the first by striking out the words "and after deliberation," and amended the second by striking out the words "and with deliberation" and gave them as amended, and refused to give the fourth, fifth and sixth.

The court gave instructions other than those named.

The statute under which the defendant was indicted is as follows:

"Whoever shall feloniously, wilfully and with malice afore-thought assault any person, with intent to kill or murder * * * shall, on conviction thereof, be imprisoned in the penitentiary not less than one nor more than twenty-one years." Kirby's Dig. § 1588. To convict of this offense, there must be proof of a specific intent to kill the person assaulted. *Scott* v. *State,* 49 Ark. 156; *Chrisman* v. *State,* 54 Ark. 283; and *Felker* v. *State,* 54 Ark. 489. And the evidence must prove that, had the person died as a result of the assault, the assailant would have been guilty of murder in either the first or second degree. *McCoy* v. *State,* 8 Ark. 451; *Cole* v. *State,* 10 Ark. 318; *Lacefield* v. *State,* 34 Ark. 275; *Davis* v. *State,* 72 Ark. 569; *Satterwhite* v. *State,* 82 Ark. 64. No other evidence than that indicated is necessary to prove the commission of the offense of an assault with an intent to kill, and the use of the words, "and after deliberation," "and with deliberation" in the instructions was unnecessary.

The requests for instructions refused were sufficiently covered by those given, and they were not necessary to make those given more intelligible, and consequently no reversible error was committed by the refusal to give them, is correct.

The evidence was sufficient to sustain the verdict.

Judgment affirmed.