JACKSON v. STATE.

4533                                     215 S. W. 2d 148

Opinion delivered November 22, 1948.

Rehearing denied December 20, 1948.

*Johnson & Johnson,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

GRIFFIN SMITH, Chief Justice. The information under which John Jackson was convicted and given a five-year prison sentence charged use of a deadly weapon in an assault upon Shelton Moore, with intent to kill.

Appellant's motion for a new trial contains twelve assignments. These have appropriately been condensed under two classifications in a very competent presentation by counsel: (a) The State's testimony did not warrant a verdict of guilty as charged; (b) the jury was improperly addressed by the Prosecuting Attorney, and the inflammatory nature of that official's argument served to prejudice the defendant.

Jackson and Moore had been friends for fifteen years, and in May of this year were neighbors. Each was addicted to the use of strong drink, and at times became intoxicated. Moore was a sawmill employe. Friday afternoon, May 14, he received a wage check, and the following morning concluded to work at home. Emphasizing the cordial relations then prevailing, Moore testified that when he saw Jackson there was no thought of hard feelings, because "I got him out of jail [last] Christmas." Whether Moore invited Jackson to his house, or whether Jackson went without invitation, is of no importance. It is not disputed that preliminary to the difficulty resulting in appellant's arrest the two consumed an appreciable quantity of whiskey. Jackson went away, (presumably to procure additional liquor) but returned empty-handed; whereupon a small quantity remaining in Moore's home was made available to Jackson, "who took a few more drinks." In the meantime, according to Moore's testimony, he as host went to the kitchen and made coffee:— "I said *coffee,* Gentlemen [of the jury], and we drank *coffee* together."

Apprehending that Jackson—who was known to be quarrelsome and dangerous when drunk—was imbibing too freely, Moore "made as if" he intended to go to town, but only went to a half-way house "where loafers always hang out," and remained until about six o'clock in order to give Jackson (who had left Moore's home) a sobering-up period; or, if Jackson returned, the latter would not

be there. On his way home Moore met Jackson in the street, and together they returned to Moore's home and again began drinking. Supper was postponed because, as Moore testified, "I knew that if we ate we would drink some more, so I laid down 'angling' across the bed." Jackson, he said, wanted to divide the whiskey, but there wasn't enough to go around, "not two drinks for me when I get thirsty for whiskey—only a little half pint bottle half full, or maybe a little more." Jackson said something about another bottle being on the dresser, but Moore replied, "John, there ain't no bottle there."

When Moore, who was then lying on the bed, disputed Jackson's assertion regarding the bottle on the dresser, Jackson made an assault; and for several seconds Moore "didn't know anything: was too busy dodging and batting my eyes." He then heard Mrs. Moore calling, and at the same time saw a flashlight fall "from her and him" and strike the floor. Jackson then asked where the whiskey was, and Moore pointed to it—on the floor. In the meantime Moore was bleeding profusely from the nose. Mrs. Moore had intervened, and Jackson's brother appeared on the scene with a "chunk of wood" or a two by four, or "something like that" in his hands.

It was stipulated that Dr. Davis, if called, would testify that Moore sustained "a broken jaw bone on one side and a fractured jaw on the other side."

Moore's wife, who did not see all of the fight, testified that the commotion attracted her attention while she was sitting on a porch. When she reached the bed where her husband had been reclining, appellant had just picked up a flashlight. Mrs. Moore was slightly deaf and did not hear all that was said, nor did she see Jackson use the flashlight. She slapped Jackson "a couple of times," and he dropped the light on the floor.

When arrested some time later Jackson told officers he had "just beaten up Shelton Moore," and he added that if they would bring Moore to him he would do it again, or finish the job.

From testimony given by the Moores there is only an inference that use of the flashlight caused the serious injuries. Jackson insisted that he fought with fists, and he undertook to justify with the explanation that Moore made an assault with the flashlight, "and I undertook to dispossess him of. it because I was afraid he would kill me with it." On cross-examination the defendant admitted he and Moore had consumed nearly five half pints of whiskey that day. He thought half of the unused liquor was his, and the fight followed Moore's refusal to tell where the remnant was. The exact question asked by appellant's counsel was, "When [Moore] refused to let you have [half that was left] or tell you where it was,— that was what caused the trouble, is that right?" Answer, "Yes, sir."

From Jackson's testimony, as reflected by what has been quoted, the jury could have believed that Moore was assaulted for his refusal to comply with a peremptory demand for surrender of the whiskey. As to Jackson's general attitude respecting behavior, there was the admission on cross-examination that convictions for fighting and being drunk were "more than he could count— about twenty-five, I would say." On a comparatively recent occasion, while being tried for beating a man with a barbed wire "switch," Jackson's defense was that he was too drunk to remember what occurred. The participants in that transaction had consumed "approximately" five pints of whiskey.

(1)—*Evidence of Intent.*—Where the State alleges an assault, and that the defendant's intent was to kill, it is not necessary to prove that the crime was committed "after or with·deliberation." *Roberson* v. *State,* 94 Ark. 69, 126 S. W. 88. But in determining the intent, the jury may give consideration to the character of the weapon employed, the manner of the assault, the nature, extent, and location of injury, and all other facts and circumstances tending to reveal the assailant's state of mind. *Davis* v. *State,* 206 Ark. 726, 177 S. W. 2d 190; *Craig* v. *State,* 205 Ark. 1100, 172 S. W. 2d 256.

To support a conviction in the case at bar it was only necessary to show that the instrument employed, when

used as a weapon, was likely to produce death or great bodily harm. It cannot be said, as a matter of law, that a heavy flashlight when viciously used by a sturdy man, was not an agency of sufficient weight, balance, and rigidity, to inflict wounds from which death might result. Indeed, the admitted consequences—a jawbone broken on one side and fractured on the other—would give substance for a factual finding that the assault was made in blind and reckless fury with a momentary purpose to use the weapon to the full extent of its potentiality as such. That Jackson considered the flashlight deadly is shown by his assertion that he took it away from Moore because of fear that he would be killed.

(2)—*Improper Argument by the Prosecuting Attorney.*—The impassioned appeal to the jury is not to be condoned, and had a mistrial been declared, and had the proceedings and order been brought up by the Attorney General to determine whether the Court abused its discretion, the Court's act would have been sustained on the ground that the manner of expression, the emphasis given to particular accusations, and possible effect upon the jury, were considerations the trial Judge was peculiarly qualified to determine. But, by the same process of reasoning, we have concluded that the Court did not think prejudicial consequences attended the address.

The facts here are different from those involved in *Hughes* v. *State,* 154 Ark. 621, 243 S. W. 70, where the Montgomery County prosecutor assured the jury the defendant was guilty "because  . . .  I know things that never got to anybody else."

In the case at bar the Prosecuting Attorney did not tell the jury he had information concerning the accused's guilt not brought out at the trial. When objections were interposed by defense counsel to particular remarks, coupled with a request that the jury be admonished to disregard them, the fact-finders were told to consider only the evidence and to base their verdict upon it.

The judgment is affirmed.