Jerry L. HERRON *v.* STATE of Arkansas

CR 04-938                                                208 S.W.3d 779

Supreme Court of Arkansas
Opinion delivered May 26, 2005

*James Law Firm*, by: *William O. James, Jr.*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice. Jerry Herron was convicted by a jury of first-degree murder and sentenced to life imprisonment for the murder of Landers Stigger, III. His sole argument on appeal is that the trial court erred by denying his motion for severance. We affirm his conviction.

The facts leading up to the murder are not disputed. Herron lived in a house in Stuttgart with Jionni Murry, Leon Earls, Karl Ice, and his co-defendant, Torry Timmons. On Friday night, February 22, 2002, while Murry and Earls were in the house alone, two masked men broke into the house with guns and allegedly stole some of Torry Timmons's money. While Earls did not recognize the men, Murry thought one was a man known as Labeeb. Later that night, Murry spoke with Timmons and Herron, told them about the break-in, and indicated that he thought Labeeb was one of the men responsible. Herron testified that he knew Labeeb and Stigger ran together. At about 10:30 that night, Herron and Timmons drove to Stigger's house with guns drawn to confront Labeeb and Stigger. Herron confronted Stigger while Timmons searched the house, the cars, and the yard for Labeeb. When they did not find Labeeb, Stigger's father told them that he was calling the police, and they left.

The next morning around 10:30 or 11:00, Murry, Earls, Ice, Timmons, and Herron were riding around in Earl's Jeep Chero-kee, when Stigger's car pulled out in front of them. Murry was driving; Timmons was in the front passenger seat; Earls and Ice were in the back seat; and Herron was in the rear compartment. Herron and Timmons were both carrying guns. While the testi-mony differs as to who suggested that they follow Stigger's car, Murry followed Stigger into a vacant lot and stopped the Jeep several car lengths behind Stigger's car. There was testimony that the distance between the cars was approximately fifty yards.

Timmons got out of the Jeep first and walked up to the driver's side window of Stigger's car to confront Stigger about the break-in the night before. The testimony differed as to whether he walked up to the car with his gun drawn. Almost immediately thereafter, Herron got out of the Jeep and approached Stigger's car on the passenger side. After some conversation between Stigger and Timmons, Stigger shot at Timmons, who ran away from the car while shooting at Stigger. Timmons was shot in his forearm. At some point during this exchange, Herron stuck his gun in the passenger-side window. The passenger, Stigger's nephew, Zakkee Boyd, grabbed Herron's arm to protect himself, and Herron fired two shots into the car. One of the bullets struck Stigger in the back, and several hours later, he died at the hospital from that wound. Herron ran from the scene, and Timmons got into the Jeep and was driven to the hospital.

Both Herron and Timmons were charged with capital murder in the death of Landers Stigger, III.[1] Their cases were consolidated for trial. After the State had rested its case and Timmons's attorney had put on all of his witnesses except for Timmons, but before Herron had testified, Herron made a motion to sever his case from Timmons's case. The basis for this motion was that Timmons's defense was antagonistic to Herron's defense. Specifically, Herron argued that his defense had always been and continued to be justification. Herron's understanding from the beginning had been that Timmons was asserting the same defense. However, as the trial progressed, Herron believed that Timmons was advancing a new defense described by his attorney to the trial court as follows:

> Mr. Timmons may well be advancing an argument of efforts being made to seek out persons who had been involved in a robbery, in the nature of a citizens arrest or something along those lines. If, in fact, that defense is being asserted by Mr. Timmons, and it appears that it is, then that is very antagonistic toward the defense of Mr. Herron.

Timmons's attorney explained that he was asserting a justification defense, just like Herron, but was supporting this defense with evidence of the robbery the night before the shooting to show that Timmons had a right to question Stigger about his property. Timmons claimed that evidence of the robbery offered justification for him to walk up to Stigger's car. The trial court denied the motion to sever.

■■ We will not disturb a trial court's ruling to grant or deny a motion for severance absent an abuse of discretion. *Echols v. State*, 326 Ark. 917, 936 S.W.2d 509 (1996); *Rockett v. State*, 319 Ark. 335, 891 S.W.2d 366 (1995). We have offered guidance to the trial courts in deciding these motions, stating that the issue of severance is to be determined on a case-by-case basis, considering the totality of the circumstances. *McDaniel v. State*, 278 Ark. 631, 648 S.W.2d 57 (1983). In *McDaniel,* we stated that the following factors favored severance:

> (1) *where defenses are antagonistic;* (2) where it is difficult to segregate the evidence; (3) where there is a lack of substantial evidence

---

[1] Timmons was also charged with aggravated assault.

implicating one defendant except for the accusation of the other defendant; (4) where one defendant could have deprived the other of all peremptory challenges; (5) where if one defendant chooses to testify the other is compelled to do so; (6) where one defendant has no prior criminal record and the other has; (7) where circumstantial evidence against one defendant appears stronger than against the other.

*Id.* (emphasis added).

Herron's sole argument for severance is that Timmons's defense was antagonistic to his. Defenses are antagonistic when each defendant asserts his own innocence and accuses the other of committing the crime. *Butler v. State*, 303 Ark. 380, 797 S.W.2d 435 (1990) (citing *McDaniel, supra*). We have also stated that defenses are antagonistic "when to believe one defendant, it is necessary to disbelieve the other." *Id.*

In this case, neither Timmons nor Herron was asserting his own innocence and accusing the other of committing the crime. There was no dispute that the bullet from Herron's gun killed Stigger. Timmons was tried as an accomplice. Their common defense was justification; that is, they both fired their guns in self-defense. They also argued that there was no plan, premeditation, or intent to kill Stigger.

The "additional defense" that Herron claims was being proposed by Timmons was not antagonistic to Herron's defense. Indeed, while Timmons may have relied upon the facts surrounding the alleged robbery to show justification for his confrontation with Stigger, the facts were actually introduced by the State during the presentation of its case and later argued by the State as evidence of Herron's and Timmons's plan and premeditation. Therefore, the facts would have been in evidence whether Timmons introduced them or not. Moreover, these facts were not presented as a "defense" by Timmons, but merely as an explanation of why he confronted Stigger in the parking lot. The only defense set forth in the jury instructions for Timmons was that deadly physical force was necessary to defend himself. This is the same defense that was set forth in the jury instructions for Herron. Finally, believing Timmons's argument that he was justified in confronting Stigger because of the robbery did not make it necessary for the jury to disbelieve Herron's defense. The arguments were not mutually exclusive, and therefore were not an-

tagonistic. We hold that the trial court did not abuse its discretion in denying Herron's motion for severance.

In compliance with Ark. Sup. Ct. R. 4-3(h), we have examined the record for all objections, motions, and requests made by either party that were decided adversely to Herron. In performing this review, we discovered an objection made by Herron's counsel during the State's cross-examination of Herron that merited review. The prosecutor asked about a previous battery conviction Herron received for "chasing down" his cousin, Ted Stigger, and shooting him. Herron objected, arguing that its prejudicial nature outweighed any probative value it offered. The court allowed the evidence under Ark. R. Evid. 404(b).

■ Arkansas Rule of Evidence 404(b) states as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Evidence offered under Rule 404(b) must be independently relevant to the main issue, in that it tends to prove some material point rather than merely proving that the defendant is a criminal. *Abernathy v. State*, 325 Ark. 61, 925 S.W.2d 380 (1996). It must have a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Williams v. State*, 343 Ark. 591, 36 S.W.3d 324 (2001).

In this case, Herron brought up the battery charge against his cousin, Ted Stigger, in his direct testimony, explaining that his grandmother criticized him for that mistake, and that he had reformed his violent behavior since that incident. Testifying that he had reformed his behavior since that time, he stated that had no intention of doing any harm to Landers Stigger. He testified that he did not intentionally fire the gun, but that when he stuck his arm in the car window, Zakkee Boyd pushed his arm toward the windshield, and the gun accidentally discharged. The State argued that the evidence that he shot his cousin, Ted Stigger, was relevant and admissible under 404(b) to prove that killing Landers Stigger was not a mistake or accident. The State also argued that the similar nature of the previous battery conviction to the crime charged in

this case made the earlier conviction relevant to impeach Herron's testimony that he had reformed his violent behavior.

■■ The admission or rejection of evidence under Rule 404(b) is committed to the sound discretion of the trial court, and this court will not reverse absent a showing of manifest abuse. *Williams, supra*. We hold that the circuit court did not abuse its discretion in admitting evidence of Herron's prior battery conviction. Finally, we have found no prejudicial error in our review under Ark. Sup. Ct. R. 4-3(h).

Affirmed.