James Everett NELSON *v.* STATE of Arkansas

CR 05-1045                                                                 229 S.W.3d 35

Supreme Court of Arkansas
Opinion delivered February 16, 2006

*Ray Bunch*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.

BETTY C. DICKEY, Justice. James Everett Nelson appeals the order of the Circuit Court of Washington County convicting him of possession of drug paraphernalia with intent to manufacture methamphetamine and possession of pseudoephedrine. He was convicted by a jury and sentenced as a habitual offender to fifty years in prison. On appeal, Nelson argues that the trial court erred by: (1) denying his motion to suppress the evidence; (2) finding that there was sufficient evidence to support his convictions; and, (3) allowing the State to introduce prior convictions under Rule 404(b) of the Arkansas Rules of Evidence. We affirm the decision of the trial court.

Jimmy Nelson, along with his passenger, Kurt Stanley, drove to Fayetteville, Arkansas in the late hours of November 3 or early hours of November 4, 2002. Officer Daniel Robbins was on patrol in the area when he observed their car, a silver Ford Taurus, pull into the Wal-Mart parking lot on Sixth Street in Fayetteville. Robbins noticed that the vehicle had a cracked windshield and that one occupant had entered Wal-Mart. After parking his car

across the street, Robbins watched the vehicle leave the Wal-Mart parking lot. When Nelson failed to stop at the stop sign while exiting, Patrolman Robbins began following the vehicle. Robbins testified that he was suspicious about a person sitting in a vehicle outside of Wal-Mart in the early morning hours since he regularly got calls about people purchasing products at Wal-Mart during that time period, in order to manufacture methamphetamine. However, he admitted that he had no knowledge that those particular items were purchased and did not stop the vehicle for that reason. While following the vehicle after it left Wal-Mart, Robbins ran the license plate and learned that the tags returned to a vehicle of a different make, model, and color. Robbins then made a traffic stop at the Waffle House.

Robbins approached the car and asked Nelson for his driver's license, registration, and proof of car insurance. Nelson retrieved his license from his wallet, but could not produce the proof of insurance. Robbins arrested him for not having insurance and put him in the patrol car. Nelson was nervous, breathing heavily, and his hands were shaking. While taking Nelson to the patrol car, Robbins asked him if he had anything illegal in the vehicle, such as drugs or weapons. When Nelson responded that he did not, Robbins asked if he could "take a look." Robbins gave testimony that he was given permission, however Nelson disputes that fact. Robbins returned to the vehicle, and instructed the passenger, Stanley, to remove a bulldog from the back of the vehicle and to wait for Animal Control to arrive. Once Animal Control came, the dog was taken away and Robbins searched the vehicle, along with Officer Christopher Webber, the "back-up" officer who had arrived shortly after the stop. The search produced the following: a plastic Wal-Mart bag containing a juice bottle with white pills inside; a torn Actifed package; two bottles of Heet; a propane bottle; two Wal-Mart receipts, one from the Fayetteville location, dated the same day as the stop at 2:40 a.m., and the other from Rogers, Arkansas, dated the previous day at 11:30 p.m.; twenty-five feet of clear plastic tubing; and a Marlboro cigarette box taped up with more white pills inside. A total of four hundred and ninety-seven pills were found in the vehicle. Stanley, the passenger, was also arrested at that time and the two men were taken to the police station. Stanley failed to appear for his arraignment and a warrant for his arrest was issued. Nelson was convicted by a jury on July 23, 2003.

Nelson appealed to the court of appeals, and his judgment of conviction was reversed in a 4-2 decision. *See Nelson v. State*, 92 Ark. App. 275, 212 S.W.3d 31 (2005). We granted the State's petition for review, pursuant to Ark. Sup. Ct. R. 2-4 (2005). When we grant review following a decision by the court of appeals, we review the case as though it had been originally filed in this court. *Porter v. State*, 356 Ark. 17, 145 S.W.3d 376 (2004).

## I. Substantial Evidence

The trial court denied Nelson's motion for a directed verdict. On appeal, Nelson alleges that the trial court erred in denying that motion because there was neither substantial evidence to support the charge of possession of drug paraphernalia with intent to manufacture methamphetamine, nor the charge of possession of pseudoephedrine. While Nelson raised this issue as his second point on appeal, preservation of Nelson's freedom from double jeopardy requires us to examine his sufficiency of the evidence argument before addressing trial errors. *Rankin v. State*, 329 Ark. 379, 948 S.W.2d 397 (1997).

A motion for a directed verdict is a challenge to the sufficiency of the evidence. When a defendant makes a challenge to sufficiency of the evidence on appeal, the appellate court views the evidence in the light most favorable to the State. *Baughman v. State*, 353 Ark. 1, 110 S.W.3d 740 (2003). The test for determining sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial; substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id*. Only evidence supporting the verdict will be considered, and the conviction will be affirmed if there is substantial evidence to support it. *Id*.

As noted by the State, Nelson did not make a proper directed-verdict motion. He made the following motion to the court:

> At this time the Defendant would move for a directed verdict on the two charges that he's facing. And basically on possession of drug paraphernalia with intent to manufacture based on the testimony and evidence submitted, we would respectfully say that the State has not met the burden of the elements of that offense, and likewise on the possession of pseudoephedrine that Jimmy Nelson possessed, those pills. And we would just ask for a directed verdict on both counts.

Arkansas Rule of Criminal Procedure 33.1 requires that where a motion for a directed verdict is made, the motion must specifically state how the evidence is deficient. *See* Ark. R. Crim. P. 33.1(a). Rule 33.1 further provides that the failure of a defendant to challenge the sufficiency of the evidence at the times *and in the manner* required by the rule will constitute a waiver of any question pertaining to sufficiency of the evidence. *See* Ark. R. Crim. P. 33.1(c) (emphasis added). Nelson's motion is improper, in that "[a] motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense." Ark. R. Crim. P. 33.1(c). The motion must specifically advise the trial court as to how the evidence was deficient. *Pyle v. State*, 340 Ark. 53, 8 S.W.3d 491 (2000). This court has repeatedly held that it will not address the merits of an appellant's insufficiency argument where the directed-verdict motion is not specific. *See Davis v. State,* 330 Ark. 501, 956 S.W.2d 163 (1997). While appellant now raises specific arguments on appeal, they were not raised at the trial court level and we are therefore precluded from considering them for the first time on appeal.

Nelson's directed-verdict motion is not preserved for this court's review. His counsel merely stated that the evidence and testimony did not meet the burden of the elements of the offenses. As set out in the rules, such a surface objection is insufficient to preserve this argument for appeal. Accordingly, this court will not address the merits of the sufficiency argument.

## II. Search and Seizure

Nelson next argues that the trial court erred in denying his motion to suppress the evidence found in his vehicle, alleging that the search was a violation of his right to be free from unreasonable searches and seizures pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and Article 2, Section 15 of the Arkansas Constitution. The appellate court conducts a *de novo* review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to a reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Davis v. State,* 351 Ark. 406, 94 S.W.3d 892 (2003). The trial court's ruling will not be reversed unless it is clearly against the preponderance of the evidence. *See Scott v. State,* 347 Ark. 767, 67 S.W.3d 567 (2002). We defer to the trial court in assessing the credibility of witnesses. *Id.*

■ Nelson begins this argument by alleging that his arrest was pretextual, therefore the trial court should have suppressed the evidence obtained as a result of that arrest. However, in the motion to suppress made to the trial court, he based his challenge to the arrest solely on the Fourth and Fourteenth Amendments to the United States Constitution, and the Arkansas Rules of Criminal Procedure. While this court has established that under the Arkansas Constitution, pretextual arrests are unconstitutional, we have also recognized, in case law on remand from the United States Supreme Court, that there is no longer a pretext inquiry under federal law as long as there was probable cause for the traffic stop. *See State v. Sullivan*, 348 Ark. 647, 74 S.W.3d 215 (2002). The patrolman initiated the traffic stop after watching Nelson commit a traffic violation, failing to stop at a stop sign. Therefore, Nelson's argument pursuant to the United States Constitution is without merit. In addition, because Nelson did not raise the issue of the Arkansas Constitution to the trial court, this court is precluded from reaching the merits of that argument for the first time on appeal.

Nelson further claims that the search and seizure were not authorized by Rule 12.1 and 12.4 of the Arkansas Rules of Criminal Procedure, rules regarding searches incident to a lawful arrest. Nelson's argument is deficient in that the trial court concluded that Nelson had consented to the search, making arguments based on the rules of criminal procedure irrelevant. In reviewing the trial court's ruling in this regard, we make an independent determination based on the totality of the circumstances, but reverse only if the ruling was clearly against the preponderance of the evidence. *Campbell v. State*, 294 Ark. 639, 746 S.W.2d 37 (1988). The State has the burden of proving that the consent was freely and voluntarily given and that there was no actual or implied duress or coercion. *Scroggins v. State*, 268 Ark. 261, 595 S.W.2d 219 (1980).

■ In the instant case, Nelson disputes the officer's testimony that he got permission to search the vehicle. However, Officer Robbins gave the following testimony:

> He said I could search the vehicle. I don't know if his exact words were "you can search the vehicle." I don't know the exact wording of what he said, but I do know he said okay or yes. I took his response as yes, you can search the vehicle. I don't really know for

sure what he said to me. I told you, I'm not sure that Mr. Nelson said "yes." It is not possible that he said that he did mind me searching the car. I'm sure that he didn't tell me no.

When the testimony of an officer and an appellant are in direct conflict, we have said that the decision amounts simply to the question of which witness to believe, which is a decision left to the trier of fact. *See Hamm v. State,* 296 Ark. 385, 757 S.W.2d 932 (1988). The trial court determined that Officer Robbins gave the most credible testimony regarding whether consent was given. Nelson's credibility was weakened by the fact that he had more at stake than the officer and the fact that he gave an improbable explanation of his circumstances. *See, e.g., Stewart v. State,* 338 Ark. 608, 999 S.W.2d 684 (1999). The decision of the trial court was not clearly against the preponderance of the evidence and we affirm.

### III. Prior Convictions

For his final point on appeal, Nelson alleges that the trial court erred by allowing the State to introduce evidence of his prior convictions. The crux of his argument rests on the evidence admitted regarding his prior convictions from 1988. Those prior convictions included possession of methamphetamine and two counts of illegal delivery of methamphetamine. The trial court admitted the evidence pursuant to Ark. R. Evid. 404(b), to show intent, knowledge, and lack of mistake. Nelson argues that the prior convictions were not relevant and too remote in time, making them more prejudicial than probative.

This court reviews evidentiary rulings using an abuse-of-discretion standard:

> This court has held that trial courts are afforded wide discretion in evidentiary rulings. *See Hawkins v. State,* 348 Ark. 384, 72 S.W.3d 493 (2002). Specifically, in issues relating to the admission of evidence under Ark. R. Evid. 401, 403, and 404(b), we have held that a trial court's ruling is entitled to great weight and will not be reversed absent an abuse of discretion. *See, e.g., Cook v. State,* 345 Ark. 264, 45 S.W.3d 820 (2001). This court will, likewise, not reverse absent a showing of prejudice. *Gains v. State,* 340 Ark. 99, 8 S.W.3d 547 (2000).

*McCoy v. State,* 354 Ark. 322, 325, 123 S.W.3d 901, 903 (2003).

Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

If evidence of prior crimes is offered for *other purposes*, pursuant to 404(b), it must also be independently relevant, thus having a "tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Bragg v. State*, 328 Ark. 613, 625, 946 S.W.2d 654, 661 (quoting *Larimore v. State*, 317 Ark. 111, 123, 877 S.W.2d 570, 576 (1994)). In other words, the prior crime must be "independently relevant to the main issue, in that it tends to prove some material point rather than merely proving that the defendant is a criminal." *Herron v. State*, 362 Ark. 446, 208 S.W.3d 779 (2005). However, it is important to note that even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Ark. R. Evid. 403 (2004).

The following convictions were admitted into evidence at Nelson's trial: he was charged with possession of methamphetamine and two counts of delivery in October 1987, for which he pleaded guilty in 1988; he was arrested for marijuana possession in June 2001, for which he was given three years' probation; and, while on probation, he was charged with possession of drug paraphernalia with intent to manufacture methamphetamine, along with possession of pseudoephedrine. The State asserts that evidence of Nelson's prior convictions was admissible regarding Nelson's culpability, his intent. We agree with the State that the evidence falls within the Rule 404(b) exception.

We now turn to the issue of whether the prior convictions were independently relevant. Nelson alleged at trial that he was simply present in the vehicle and that the drugs belonged to his passenger. However, the evidence of his prior convictions offered probative evidence in opposition to that allegation. The prior convictions make it more probable that Nelson understood the components of methamphetamine and the manufacturing process, that he knew that the items in his possession were illegal in that

quantity, and that he knew the items were used for manufacturing methamphetamine. Therefore, the evidence was independently relevant.

■ Evidence admitted pursuant to 404(b) must prove to not be too separated in time, making the evidence unduly remote. *United States v. McCarthy*, 97 F.3d 1562 (8th Cir. 1996). The trial judge is given sound discretion over the matter of remoteness, and will be overturned only when it is clear that the questioned evidence has no connection with any issue in the case. *Cary v. State*, 259 Ark. 510, 534 S.W.2d 230 (1976). As we have already noted, the evidence does have a connection to Nelson's intent in this case. Although the prior convictions were approximately fourteen years prior to Nelson's arrest in the instant case, a reasonableness standard is used to determine whether a prior crime remains relevant rather than a specific time limit. *See United States v. Green*, 151 F.3d 1111 (8th Cir. 1998); *United States v. McCarthy*, 97 F.3d 1562 (8th Cir. 1997) (holding that a seventeen-year-old conviction was not too remote in time); *United States v. Engelman*, 648 F.2d 473 (8th Cir. 1981) (holding that a thirteen-year-old offense was not too remote in time); *Brenk v. State*, 311 Ark. 579, 847 S.W.2d 1 (1993) (allowing thirteen-year-old threats made to an ex-wife to come into evidence). After considering the relevancy of Nelson's prior crimes, we find it reasonable that they were admitted pursuant to 404(b).

■ The evidence admitted under 404(b) must pass a 403 analysis, meaning its probative value must not be substantially outweighed by any unfair prejudice. Considering that Nelson attempted to place the blame on his passenger, and that the evidence here involved the same type of drug offense, the probative value was high. If the introduction of evidence of other crimes, wrongs, or acts is independently relevant to the main issue, in the sense of proving some material point rather than to merely prove the defendant is a criminal, then evidence of that conduct may be admissible with a proper cautionary instruction by the court. *Smith v. State, supra.* Here, the trial court did not admit evidence regarding four other convictions received by Nelson in 1988 for firearms and drug-related charges. The court read into the record only the necessary information regarding the three convictions and gave cautionary instructions regarding the impermissibility of considering Nelson's prior convictions for anything other than the issue of intent. We conclude that the probative value of

this evidence outweighed any unfair prejudice to Nelson and that the trial court did not abuse its discretion.

For his final point on appeal, Nelson argues that the trial court erred in admitting evidence of his marijuana conviction for impeachment purposes. However, he cites no authority. Furthermore, the evidence was properly admitted for impeachment under Ark. R. Evid. 609. Rule 609 states in relevant part:

> (a) General Rule. For the purposes of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs the prejudicial effect to a party or a witness, or (2) involved dishonesty or false statement, regardless of the punishment.

Ark. R. Evid. 609(a) (2005).

Nelson elected to testify at his trial and explained on direct examination that his priors were committed when he was young. On cross-examination he further explained that "you do stupid things when you're young," and attempted to establish that he had been clean since his 1988 convictions. However, the State impeached him with the evidence of the marijuana charge, which was punishable by more than one year imprisonment and which occurred less than ten years ago. We conclude that there was no abuse of discretion by the trial court in admitting this impeachment evidence.

Affirmed.

HANNAH, C.J., dissents.

JIM HANNAH, Chief Justice, dissenting. I must respectfully dissent. At issue in this appeal is Nelson's intent to manufacture methamphetamine. The admitted 1988 convictions showed that Nelson possessed methamphetamine and that he delivered methamphetamine. Neither conviction was relevant to show that over a decade later he had the intent to manufacture. No methamphetamine was found in the car, and Nelson was charged with neither possession nor delivery in this case. I note that the State offered as relevant

evidence of intent the items seized from the car he was driving,[1] all of which do relate to the manufacture of methamphetamine.

The jury was charged with determining whether Nelson "knowingly" possessed drug paraphernalia with the intent to manufacture methamphetamine and "knowingly" possessed pseudoephedrine in violation of the law. The total number of pseudoephedrine pills seized from the car Nelson was driving was 497, which amounted to 29.7 grams. The legal limit one may possess is 9 grams. Ark. Code Ann. § 5-4-1101(a) (Supp. 2003). The inference that arises from the circumstance of the possession of enough cold pills to treat all the winter colds of a small town is obvious. The possession of 497 pills, coupled with being outside their original packaging, contained in a used orange juice container and cigarette package, together with the tubing, Heet, and propane, constitute circumstances that strongly imply an intent to manufacture methamphetamine. This amounts to circumstantial evidence of an intent to manufacture.

Intent is rarely provable by direct evidence. *Price v. State*, 347 Ark. 708, 66 S.W.3d 653 (2002). Intent "must usually be inferred from the circumstances of the crime." *Watson v. State*, 358 Ark. 212, 219, 188 S.W.3d 921, 925 (2004). "[G]enerally, circumstantial evidence is the only means of proof available" in proving intent. *Smith v. State*, 264 Ark. 874, 879, 575 S.W.2d 677, 681 (1979). "Circumstantial evidence of a culpable mental state may constitute substantial evidence to sustain a guilty verdict." *Steggall v. State*, 340 Ark. 184, 194, 8 S.W.3d 538, 545 (2000). However, while a criminal defendant's intent or state of mind is rarely capable of proof by direct evidence and "must usually be inferred from the circumstances of the crime . . . [w]hether the evidence is direct or circumstantial . . . it must still meet the requirement of substantiality. It must force the fact-finder to reach a conclusion one way or the other without resorting to speculation or conjecture." *Gregory v. State*, 341 Ark. 243, 247, 15 S.W.3d 690, 693 (2000).

---

[1] The evidence seized from the car and introduced at trial were the following items: (1) A plastic Wal-Mart bag containing a plastic orange juice bottle containing white pills; (2) A torn Actifed package that was inside the orange juice bottle; (3) Two bottles of Heet contained in the same Wal-Mart bag; (4) A bottle of propane also contained in the same Wal-Mart bag; (5) Two Wal-Mart receipts from two different stores; (6) A Marlboro box containing white pills; (7) A bottle of propane; and (8) Twenty-five feet of clear tubing.

The majority's conclusion that the evidence of the 1988 convictions for possession and delivery of methamphetamine make it more probable that Nelson possessed with the intent to manufacture in the present case is based on nothing more than an intuitive assumption that a person who has previous convictions for possession and delivery of methamphetamine is more likely to manufacture methamphetamine fourteen years later than a person who has never had any convictions for possession and delivery of methamphetamine. The lack of similarity between the crimes is profoundly significant. Convictions from 1988 for possession and delivery of methamphetamine do not constitute evidence having any tendency to make it more or less probable that Nelson possessed the seized items with the intent to manufacture on this occasion. It is mere speculation to conclude that because Nelson was convicted in 1988 for possession and delivery that he intended to manufacture on this occasion. It is readily apparent that the evidence was introduced to show that Nelson is a person of bad character who is addicted to crime.

What is relevant and admissible on the issue of intent is evidence of the circumstances of the crime tending to reveal the defendant's state of mind. *See, e.g., Clay v. State*, 236 Ark. 398, 366 S.W.2d 299 (1963); *Jackson v. State*, 214 Ark. 194, 215 S.W.2d 148 (1948). The 1988 convictions fail to meet this requirement.

The analysis in the circuit court and the analysis of the majority is flawed and inadequate. The State was not countering an argument of Nelson in admitting the evidence of the convictions. The issue of the prior convictions was first raised when the State filed a "Trial Memorandum" two days before trial arguing that Nelson's prior convictions were admissible in its case–in–chief to show "intent, preparation, plan, knowledge and absence of mistake" under Ark. R. Evid. 404. A pretrial hearing on the issue was held in which the circuit court found that the prior convictions for possession of methamphetamine and delivery of methamphetamine were "independently relevant to prove that he had the intent, that he had the knowledge, that he had the plan, the preparation, and that there was no mistake in this case." The majority concludes that, "[t]he prior convictions make it more probable that Nelson understood the components of methamphetamine and the manufacturing process, making it more probable that he also knew that the items in his possession were illegal in that quantity, as well as used for manufacturing methamphetamine." The majority thus apparently holds that the evidence satisfies the

requirements of relevance under Ark. R. Evid. 401. A conclusion is not analysis. As already discussed, the prior convictions are not relevant under the facts of this case. .

The analysis on admission under Ark. R. Evid. 404(b) is also lacking and in error. The majority concludes that the evidence was independently relevant because it was "probative" in opposition to Nelson's allegation at trial that he "was simply present in the vehicle and that the drugs belonged to his passenger." However, Nelson did not deny that the items belonged to him until he testified at trial. To the contrary, it is the State who first raised the issue of the prior convictions. In its opening statement, the State told the jury, "And finally you'll hear evidence that the Defendant himself is no stranger to methamphetamine. He knows what it is, he knows how you make it, he's been convicted for two counts of delivering it and one count of possessing it. He knows exactly what it is." There is little doubt that the prior convictions were admitted to prove Nelson was a man of bad character who acted in conformity with that character in this case.

The State put on no rebuttal to Nelson's claim in his testimony that the items were not his. In any event, as noted, the evidence of the convictions was admitted in the State's case before Nelson testified, so obviously the evidence was not offered in rebuttal. Apparently, by pleading innocent, Nelson was faced with the choice of either putting on no case in his defense or suffering the admission of the evidence of the prior crimes. That seems to run counter to the presumption of innocence. This Hobson's choice might well be a concern that gave rise to the rule that one crime may not be proven by proof of the commission of another unconnected crime.

I also disagree on the issue of remoteness. The majority again presents a conclusion rather than analysis, stating simply that admission of the prior convictions was "reasonable." The cited cases do not support the majority's conclusion. In *Brenk v. State*, 311 Ark. 579, 847 S.W.2d 1 (1993), threats made by Brenk to his first wife that "he would kill her, cut her body to pieces, and scatter the pieces from Mammoth Springs, Arkansas, to Louisiana, so that no one would find her," although several years old, were allowed. *Brenk*, 311 Ark. at 598, 847 S.W.2d at 10. However, although the passage of years was noted, there is no significant discussion of remoteness in *Brenk*. It must be noted that Brenk was accused of killing his second wife, cutting her body up, and putting her torso in a cooler that was sunk in a lake, a method remarkably

similar to the threats his first wife testified to. The question in *Brenk* was whether it was relevant that he had killed his second wife and disposed of her body in a way strikingly similar to threats he had previously made to his first wife. The evidence was held relevant to plan or intent in a murder case. *Brenk* is not applicable to this case. There is no similarity between the crimes Nelson was convicted of in 1988 and the present crime.

On the issue of remoteness, the majority argues in essence that convictions older than Nelson's have been admitted by other courts. This conclusion ignores the discussion in the cited cases. In *United States v. Green*, 151 F.3d 1111 (8th Cir. 1998), the court noted that it did not apply a standard of an absolute number "in determining whether a prior offense occurred within a relevant time frame for purposes rule 404(b)." *Green*, 151 F.3d at 1113. Rather, a reasonableness standard is applied. In *United States v. McCarthy*, 97 F.3d 1562 (8th Cir. 1996), the court again referenced the reasonableness test, and cited *United States v. Engleman*, 648 F.2d 473 (1981). In *Engleman*, the court stated that it "applies a reasonableness standard and examines the facts and circumstances of each case." *Engleman*, 648 F.2d at 479. The court in *McCarthy*, *supra*, relied on *United States v. Mejis-Uribe*, 73 F.3d 395, 398 (8th Cir. 1996), where the court stated:

> The inquiry regarding the remoteness of a prior conviction is fact specific. The two crimes in *Engleman* were very unique, involving a common scheme. Here, although both crimes involved the distribution of cocaine, the 1978 conviction involved a single sale of cocaine to undercover agents. In contrast, this case involved a large scale, ongoing operation that Uribe entered under Ochoa's direction. Uribe's crimes are not as similar in kind as the crimes in *Engleman*, and they are even more remote in time. *See Smith*, 49 F.3d at 478. Thus, the 1978 conviction was not similar in kind or reasonably close in time to the instant charges. *Id*.

Merely stating that other courts have allowed crimes older than thirteen years to come in and then summarily concluding that the admission in the present case was reasonable is not meaningful analysis. The convictions are too remote and dissimilar to be admitted.

On the issue of Ark. R. Evid. 403, the majority states that, "[c]onsidering that Nelson attempted to place the blame on his passenger, and that the evidence here involved the same type of drug offense, the probative value was high." The statement that

the same type of drug offense was involved is simply wrong. *See Mejis-Uribe, supra.* The earlier offenses were for possession and delivery. The present offenses are both based on manufacture. Concluding that denial of guilt amounts to highly probative evidence of guilt is disturbing. Too, as I stated earlier, it was the State not Nelson who first introduced the prior convictions and asserted that he was a person addicted to crime involving methamphetamine. The probative value asserted by the majority is mere conjecture thinly veiled by words that assert relevance.

Any reference to a defendant's prior convictions during the guilt phase of a criminal trial results in at least some prejudice to the defendant. *Smith v. State,* 351 Ark. 468, 95 S.W.3d 801 (2003). "The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime." *Michelson v. United States,* 335 U.S. 469, 475 (1948). Rather, a finding of guilt must rest upon proof beyond a reasonable doubt that the defendant committed the offense for which he or she is being tried. *Hickey v. State,* 263 Ark. 809, 569 S.W.2d 64 (1978) (citing *Alford v. State,* 223 Ark. 330, 266 S.W.2d 804 (1954)).

> The facts laid before the jury should consist exclusively of the transaction that forms the subject of the indictment, and matters relating thereto. To enlarge the scope of the investigation beyond this would subject the defendant to the dangers of surprise against which no foresight might prepare and no innocence defend.

*Billings v. State,* 52 Ark. 303, 309, 12 S.W. 574, 575 (1889). Even if the evidence of the possession and delivery of methamphetamine were relevant, the prejudicial harm caused by its admission so grossly overwhelms any slight probative value that it calls into question whether the State complied with its burden to prove Nelson's guilt beyond a reasonable doubt on the crimes charged. Admission of Nelson's prior convictions may have assured his guilt and precluded a determination by the jury of whether it did or did not believe his testimony.

A criminal defendant is not entitled to a jury totally ignorant of the facts of a case, and he or she is not entitled to a perfect trial, but he or she is entitled to a fair trial. *Lee v. State,* 343 Ark. 702, 38 S.W.3d 334 (2001); *Beed v. State,* 271 Ark. 526, 609 S.W.2d 898 (1980). As noted in *Franklin v. State,* 251 Ark. 223, 471 S.W.2d 760

(1971), it is an unpleasant duty to grant a new trial where evidence is so clear that someone has committed a crime. In the present case, it is clear that someone was about to manufacture methamphetamine, and likely it was a joint venture. However, constitutional rights must be protected for the benefit of all of us. This case should be reversed and remanded for a new trial.