Cite as 2020 Ark. App. 235

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CR-19-599

| | |
|---|---|
| RODERICK SHOULDERS<br><br>APPELLANT<br><br>V.<br><br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** April 15, 2020<br><br>APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT<br>[NO. 30CR-18-72]<br><br><br>HONORABLE CHRIS E WILLIAMS, JUDGE<br><br>AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Appellant Roderick Shoulders was charged with trafficking a controlled substance after an Arkansas State Trooper found more than 200 grams of methamphetamine in the trunk of Shoulders's rental car during a traffic stop. Before trial, Shoulders moved to suppress the evidence seized as a result of that stop, arguing that he did not consent to the trooper's search of his vehicle. The Hot Spring County Circuit Court held a hearing on Shoulders's motion and denied it, finding that the trooper had obtained Shoulders's consent to search. Shoulders proceeded to a jury trial, and a jury convicted him of one count of trafficking a controlled substance; he was sentenced to forty years in the Arkansas Department of Correction. Shoulders filed a timely notice of appeal and now argues that the circuit court erred in denying his motion to suppress the evidence seized from his car. We affirm.

## I. *Standard of Review*

In reviewing a circuit court's denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court and proper deference to the circuit court's findings. *Jackson v. State*, 2013 Ark. 201, 427 S.W.3d 607. A finding is clearly erroneous, even if there is evidence to support it, when the appellate court, after review of the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id.* We defer to the superiority of the circuit court to evaluate the credibility of witnesses who testify at a suppression hearing. *Id.* We reverse only if the circuit court's ruling is clearly against the preponderance of the evidence. *Id.* With our standard of review in mind, we turn our attention to the evidence presented at the suppression hearing.

## II. *The Suppression Hearing*

Trooper Timothy Callison testified that he pulled Shoulders over on Interstate 30 for speeding and for traveling in the left-hand lane when there was no traffic in the right-hand lane.[1] As Callison approached Shoulders's car, he observed that Shoulders was breathing heavily, he would not maintain eye contact, and his hands were visibly shaking when he handed over his paperwork. Callison also discovered that Shoulders was driving a rental car but was not the authorized driver pursuant to the rental agreement. Callison asked

---

[1]Shoulders does not contest the validity of the initial traffic stop.

Shoulders to step out of the rented vehicle and had him sit in the front seat of his patrol car, where their subsequent conversation was recorded.

Once in the patrol car, Callison asked routine questions, such as whether Shoulders had been drinking or was too tired to drive, where he was driving from and how long he had been there, and whether he had any traffic tickets or had ever been arrested. Shoulders denied that he had been drinking or was too tired to drive. He told Callison that he had driven the rented car from Kentucky to Houston, Texas, and was returning home. Callison found the details provided by Shoulders to be inconsistent.[2] Callison expressly testified that he asked Shoulders for consent to search the vehicle. In response to his request to search, Shoulders asked what he meant; Callison said, "Is it okay for me to search?" Shoulders answered, "Yes," so Callison got out of his vehicle and began searching. When he popped the trunk, he found a red suitcase and a camouflage bag.[3] Despite his testimony that Shoulders gave consent to search, Callison agreed on cross-examination that Shoulders's response to his request for consent to search was inaudible on the recorded conversation. He reiterated, however, that it was his testimony that Shoulders authorized him to search the vehicle, saying, "I wouldn't have done it without [his consent]."

Shoulders offered a different account of his encounter with Callison. According to Shoulders, after Callison pulled him over and had him sit in the police car, Callison asked if

_____

[2]The car had been rented in Louisville, Kentucky, on February 26, and the traffic stop occurred on February 28, but Shoulders contended that he had spent a few days in Houston, Texas.

[3]It was later determined that the bags contained more than 200 grams of methamphetamine.

Shoulders minded if he searched the vehicle. Shoulders said, "I was like, no. Shook my head no." On cross-examination, Shoulders admitted that Callison asked him if he had a problem with him searching the car, but Shoulders testified that he was under the impression that Callison was asking permission to run his dog around the car. In fact, Shoulders testified that he consented to having the dog run around the car. When Callison opened the trunk, Shoulders objected to the search because he thought Callison only meant "the front part" of the car.

In addition to hearing the live testimony of both Callison and Shoulders, the circuit court watched the video and heard the audio exchange between the two in the patrol car. Based on this evidence, the circuit court denied Shoulders's motion to suppress. The court explicitly found that Callison's testimony was more credible than Shoulders's, stating that Callison was "clear, concise, without any discrepancies," while Shoulders's statements were "completely unbelievable." Accordingly, the court denied the motion to suppress the evidence.

III. *Discussion*

Pursuant to Arkansas Rule of Criminal Procedure 11.1(a), "[a]n officer may conduct searches and make seizures without a search warrant or other color of authority if consent is given to the search." The State has the burden of proving by clear and positive evidence that consent to a search was freely and voluntarily given and that there was no actual or implied duress or coercion. Ark. R. Crim. P. 11.1(b). The United States Supreme Court has held that the test for a valid consent to search is that the consent be voluntary, and "[v]oluntariness is a question of fact to be determined from all the circumstances." *Ohio v.*

*Robinette*, 519 U.S. 33, 40 (1996); *see also Welch v. State*, 364 Ark. 324, 328–29, 219 S.W.3d 156, 158 (2005).

On appeal, Shoulders contends that his motion to suppress should have been granted because the evidence was "clear" that he misunderstood the scope of the search that Callison intended to conduct. Reduced to its essence, his argument is that the circuit court should have believed his testimony over Callison's.

Clearly, Callison and Shoulders offered different versions of what did or did not occur between them. Callison was firm that Shoulders gave his consent, while Shoulders was adamant that he did not. Although the conversation between the two was recorded, the recording sheds little light on the discrepancy in the testimony. With regard to whether Shoulders gave or withheld consent, the recorded conversation reflects the following exchange:

CALLISON: Mr. Shoulders, it's not making no sense, partner. You got nothing in there going to get you in trouble, right? I run my dog around that car he ain't going to smell nothing, right? You ain't got no drugs in there? You got a problem with me searching the car?

SHOULDERS: I mean—

CALLISON: Is it okay with you if I search the car just to make sure there's nothing in there and get you on the way?

SHOULDERS: (Inaudible.)

CALLISON: Okay. Well, I'll be right back. . . .

As Callison admitted, the recording contains an inaudible response from Shoulders to the direct question "Is it okay if I search the car?" Callison stated that the inaudible answer was

"yes," while Shoulders testified that the inaudible answer was "no." The circuit court was left with the task of determining credibility on the basis of this directly conflicting testimony.

Our supreme court has been clear that "[w]hen the testimony of an officer and an appellant are in direct conflict, . . . the decision amounts simply to the question of which witness to believe, which is a decision left to the trier of fact." *Nelson v. State*, 365 Ark. 314, 321, 229 S.W.3d 35, 41 (2006) (citing *Hamm v. State*, 296 Ark. 385, 757 S.W.2d 932 (1988)). In *Nelson*, the supreme court determined that the circuit court gave greater credence to the police officer's testimony regarding whether consent was given and that the defendant's credibility had been "weakened by the fact that he had more at stake than the officer and the fact that he gave an improbable explanation of his circumstances." *Id.* Therefore, the supreme court concluded that the circuit court's decision was not clearly against the preponderance of the evidence. *Id.*

That is precisely the situation here. The circuit court expressly determined that Callison was more credible in his testimony than Shoulders was, and it believed Callison's testimony that Shoulders consented and that he would not have searched the vehicle if Shoulders had not consented. On appeal, Shoulders is essentially asking us to reweigh the evidence, which we do not do. *See, e.g.*, *Crozier v. State*, 2016 Ark. App. 307, at 4, 496 S.W.3d 401, 404 ("This court neither weighs the evidence nor evaluates the credibility of witnesses."); *Wright v. State*, 2010 Ark. App. 425, at 5, 375 S.W.3d 695, 698 ("[I]t is the [circuit] court's province to weigh the evidence and resolve the credibility of the witness."). Given our deference to the circuit court's credibility determinations, we affirm.

Affirmed.

GLADWIN and BROWN, JJ., agree.

*Ogles Law Firm, P.A.*, by: *John Ogles*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.