IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 4, 2010

## STATE OF TENNESSEE v. LANCE BURTON

**Appeal from the Criminal Court for Shelby County**
**No. 08-01339    W. Mark Ward, Judge**

---

**No. W2009-01875-CCA-R3-CD - Filed August 17, 2010**

---

The Defendant, Lance Burton, was convicted by a Shelby County Criminal Court jury of one count of aggravated robbery, a Class B felony. The trial court sentenced the Defendant as a mitigated offender to eight years in the custody of the Tennessee Department of Correction. In this appeal as of right, he contends that the evidence is insufficient to support his conviction and that the State committed prosecutorial misconduct during closing argument. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

Neil Umsted (on appeal); and Kevin T. Krause (at trial), Memphis, Tennessee, attorneys for appellant, Lance Burton.

Robert E. Cooper, Attorney General and Reporter; David H. Findley, Senior Counsel; William L. Gibbons, District Attorney General; W. Chris Scruggs and Kate Edmands, Assistant District Attorneys General, attorneys for appellee, State of Tennessee.

### OPINION

Shala Latham testified that on October 9, 2007 she was working third shift at a Circle K convenience store in Memphis, Tennessee, where she had worked for over five years prior to this incident. She recalled that at approximately 3:00 a.m., "[a] young man" entered the store. When she greeted him, he said "give me all your money." She said that "he had a syringe, a needle . . . [and] [h]e was bleeding. He scared me half to death." She gave him all the paper money, about twenty-five dollars, from her register, and then the man left. As soon as he left, Ms. Latham telephoned the police and her store manager.

Ms. Latham recalled that the man held the needle in his right hand and that his left hand "was all bloody." She described her fear of the needle and said that "I didn't want him to stick me. I didn't want to get no diseases." On cross-examination, Ms. Latham elaborated regarding the man's use of the needle; she said that he pulled the top from the syringe as he said "I'm sorry to do this to you, but give me all your money." She also testified that the man appeared to be on drugs because he was "shaky and sweaty." She acknowledged that the man did not jab at her or swipe her with the needle, nor did he verbally threaten her during the incident. The victim made a tentative identification of the Defendant from a photographic lineup several days after the offense. During her testimony, she positively identified the Defendant as her assailant.

A surveillance camera at the store recorded the incident; the digital video recording was played for the jury. The recording shows a man approaching the counter and the victim giving him cash from the register. The man's right hand is hidden by the camera angle, obscuring any view of the needle. The victim testified that due to the camera angle, the needle could not be seen on the recording.

Memphis Police Department Sergeant Kevin Lundy testified that he was working with the Safe Streets Task Force in 2007 and investigated the robbery. Through the use of the digital recording and Crime Stoppers' tips, the Defendant was identified as a suspect in the robbery. When Sgt. Lundy arrested the Defendant on October 12 at the Defendant's sister's apartment, the Defendant appeared "disheveled" and had a bandaged cut on his right thumb. After waiving his Miranda rights, the Defendant admitted to committing the robbery by using a "capped syringe" and said that he received "approximately thirty dollars." He explained that he "was high at the time and probably drinking." He said that he "was going up to Memphis to get some more drugs and just made a stupid decision." The Defendant then said, "I am sorry and I didn't mean to hurt anybody."

Based upon this evidence, the jury convicted the Defendant of aggravated robbery. At sentencing, the trial court imposed a sentence of eight years to be served as a mitigated offender. On appeal, the Defendant contends that the evidence is insufficient to support his conviction because a needle is not a deadly weapon. He also argues that the State committed prosecutorial misconduct during closing argument by its derogatory remarks about defense counsel and asks this court to review this allegation for plain error. The State contends that the evidence is sufficient to support a conviction for aggravated robbery and that the prosecutorial misconduct allegation does not warrant plain error review. Following our review, we agree with the State and affirm the judgment of the trial court.

ANALYSIS

*Sufficiency of the Evidence*

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). The appellate court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See <u>State v. Sheffield</u>, 676 S.W.2d 542, 547 (Tenn. 1984); <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See <u>State v. Bland</u>, 958 S.W.2d 651, 659 (Tenn. 1997). "A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." <u>Id.</u>; <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence." <u>State v. Pendergrass</u>, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

Aggravated robbery, as relevant to this case, is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. §§ 39-13-401 and -402(a)(1). Included in the statutory definition for "deadly weapon" is "[a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tenn. Code Ann. § 39-11-106(a)(5)(B). "Serious bodily injury" is defined as "bodily injury that involves a substantial risk of death; protracted unconsciousness; extreme physical pain; protracted or obvious disfigurement; or protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty." Tenn. Code Ann. § 39-11-106(a)(34).

In <u>Morgan v. State</u>, 415 S.W.2d 879 (Tenn. 1967), our supreme court explained that there is a distinction between items that are per se deadly weapons, such as a gun, and those items that in the manner of their use may qualify as deadly weapons. The court explained that:

> Weapons may be placed, generally, in two categories, namely: deadly per se, such as fire arms; and deadly by reason of the manner in which they are used. It is generally recognized by the majority of States that, "a dangerous or deadly weapon is any weapon or instrument which, from the manner in which it is

3

used or attempted to be used, is likely to produce death or cause great bodily injury."

Morgan, 415 S.W.2d at 882 (citing 77 C.J.S. Robbery § 25, page 465; People v. Crowl, 82 P.2d 507 (Cal. 1938); Jackson v. State, 215 S.W.2d 148 (Ark. 1948); Williams v. State, 39 So.2d 37 (Ala. 1948)). The court then held that "a car tool, knife or other hard object wrapped in a sock and used as a bludgeon or club to assault a person in the perpetration of a robbery" was a deadly weapon. Morgan, 415 S.W.2d at 882.

Following this analysis, this court had held several items, though not per se deadly weapons, to be deadly weapons due to the manner of their use. See, e.g., State v. Madden, 99 S.W.3d 127 (Tenn. Crim. App. 2002) (pointed-toe cowboy boots were deadly weapons in especially aggravated robbery case); State v. Eaves, 959 S.W.2d 601 (Tenn. Crim. App. 1997) (plastic pen was a deadly weapon in aggravated assault case); State v. Tate, 912 S.W.2d 785 (Tenn. Crim. App. 1995) (automobile was a deadly weapon in aggravated assault case).

In State v. McGouey, 229 S.W.3d 668 (Tenn. 2007), our supreme court held that an unloaded pellet gun was not a deadly weapon in an aggravated assault case because it was not capable of causing death or serious bodily injury. The Defendant argues that McGouey should control our resolution of the similar issue in this case. However, as correctly noted by the State, the aggravated robbery statute differs from the aggravated assault statute in that it provides that aggravated robbery may be committed "by display of any article used or *fashioned to lead the victim to reasonably believe it to be a deadly weapon*." Tenn. Code Ann. § 39-13-402(a)(1). Thus, this court has affirmed a conviction for aggravated robbery when a Defendant used a rag on his hand "in an effort to lead [the victim] to believe he held a weapon." State v. Davenport, 973 S.W.2d 283, 286 (Tenn. Crim. App. 1998); see also State v. Michael V. Morris, No. M2006-02738-CCA-R3-CD, 2008 WL 544567 (Tenn. Crim. App. Feb. 25, 2008), perm. app. denied (Tenn. Aug. 25, 2008) (holding that the defendant's hand in pocket caused the victim to reasonably fear that the defendant had a gun and that this was sufficient to sustain aggravated robbery conviction).

The evidence in this case shows that the bloodied and disheveled Defendant approached the register, uncapped the syringe, and demanded money from the store clerk. The victim testified that she was not sure if anything was in the syringe but complied with the Defendant's demands because she said, "I didn't want him to stick me. I didn't want to get no diseases." It is clear that the Defendant's use of the syringe placed the victim in fear, enabling him to accomplish the theft. Furthermore, the victim reasonably believed that the syringe could contain a substance capable of causing death or serious bodily injury. Therefore, the use of the syringe in this manner qualified as a deadly weapon. Accordingly,

4

we conclude that the evidence is sufficient to support the Defendant's conviction for aggravated robbery.

*Prosecutorial Misconduct*

The Defendant contends that the State committed prosecutorial misconduct during its closing argument. Conceding that he failed to object contemporaneously during closing argument, he asks this court to review the issue for plain error. Pursuant to Rule 36(a) of the Tennessee Rules of Appellate Procedure, "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Accordingly, the Defendant is limited to "plain error" review pursuant to Rule 36(b) of the Tennessee Rules of Appellate Procedure. The Defendant must establish the following five factors before this court will consider an issue for plain error:

(a)  The record . . . clearly establish[es] what occurred in the trial court;
(b)  a clear and unequivocal rule of law [has] been breached;
(c)  a substantial right of the accused [has] been adversely affected;
(d)  the accused did not waive the issue for tactical reasons; and
(e)  consideration of the error is "necessary to do substantial justice."

State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). On appeal, the defendant has the burden of establishing that these five factors are met. State v. Gomez, 239 S.W.3d 733, 737 (Tenn. 2007) ("Gomez II") (citing State v. Bledsoe, 226 S.W.3d 349, 355 (Tenn. 2007)). The appellate court need not consider all five factors if any single factor indicates that relief is not warranted. Smith, 24 S.W.3d at 283.

In determining whether a prosecutor's statements violated a clear and unequivocal rule of law, we first note that our supreme court has recognized that closing argument is a valuable privilege for both the State and the defense and that counsel is afforded wide latitude in presenting final argument to the jury. See State v. Cribbs, 967 S.W.2d 773, 783 (Tenn. 1998); State v. Cone, 665 S.W.2d 87, 94 (Tenn. 1984). However, a party's closing argument "must be temperate, predicated on evidence introduced during trial, relevant to the issues being tried, and not otherwise improper under the facts or law." State v. Middlebrooks, 995 S.W.2d 550, 568 (Tenn. 1999). This court, citing to standards promulgated by the American Bar Association,[1] has identified "five general areas of

_____

[1] See American Bar Association, ABA Standards for Criminal Justice: Prosecution Function and Defense Function §§ 3-5.8, 3-5.9 (3d ed. 1993).

5

prosecutorial misconduct": (1) intentionally misstating the evidence or misleading the jury as to inferences it may draw; (2) expressing the prosecutor's personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant; (3) using arguments calculated to inflame the passions or prejudices of the jury; (4) using arguments that would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused or by predicting the consequences of the jury's verdict; and (5) intentionally referring to or arguing facts outside the record unless the facts are matters of public knowledge. State v. Goltz, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003).

During rebuttal argument, the prosecutor characterized defense counsel's closing argument that the needle was not a deadly weapon as "defense attorney tricks, defense attorney strategy." In response to defense counsel's argument that the victim's credibility was questionable because she did not appear to be hysterical during the incident, the prosecutor further argued that "it's offensive that [defense counsel] suggests that because she's a woman she should be hysterical, falling out."

In our view, the prosecutor's statements were in direct response to defense counsel's arguments concerning the credibility of the victim and the application of the law to the facts of this case. The statements were not misleading, inflammatory, or otherwise improper. See id. Thus, the Defendant has failed to show that a clear and unequivocal rule of law was breached. Furthermore, we conclude that review of the issue is not necessary to do substantial justice. Accordingly, this issue has no merit.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE